A93A0731. GEORGIA MUTUAL INSURANCE COMPANY, INC.
v. ROLLINS, INC.
(434 SE2d 581)

ANDREWS, Judge.

Georgia Mutual Insurance Company appeals the trial court's grant of summary judgment to Rollins on the issue of liability. The following facts are relevant and undisputed. On March 8, 1986, Bud Lee McGill, an employee of Orkin Exterminating Company and Rollins, Inc., was involved in an automobile accident with Benischek. McGill was driving his own vehicle at the time of the accident.

On April 24, 1986, Benischek filed a lawsuit against McGill, Orkin, and Rollins for the injuries he allegedly sustained in the accident. Benischek alleged that at the time of the accident McGill was in the course of his employment and that Orkin and Rollins were liable under a theory of respondeat superior. Rollins and Orkin claimed that McGill was not in the scope of his employment at the time of the accident.

On the accident date, McGill had an insurance policy for his automobile with Georgia Mutual. McGill notified the company of the

accident and Georgia Mutual entered a defense on his behalf.

On May 16, 1986, Rollins demanded that Georgia Mutual provide it a defense, based on its claim that it was insured under that company's policy. Georgia Mutual refused to do so. At the time of the accident, Rollins had an insurance policy with Scottsdale Insurance Company; an answer was filed on Rollins' behalf on May 23, 1986.

The liability lawsuit settled for $90,000; Georgia Mutual paid its liability limits of $15,000 and Scottsdale and Rollins paid $75,000. On September 7, 1990, Rollins filed the instant suit against Georgia Mutual to recover attorney fees and expenses in the liability suit, and also to recover damages for the alleged bad faith refusal to defend.

Rollins filed a motion for summary judgment, which the trial court granted. In doing so, the trial court found that Rollins was an insured under the Georgia Mutual policy, that Georgia Mutual provided the primary coverage for Rollins and had the primary duty to defend Rollins in the suit. Georgia Mutual appeals this decision.

1. We will address Georgia Mutual's third enumeration of error first. In this enumeration Georgia Mutual claims that the trial court erred in finding that Rollins was an "insured" under the policy. This enumeration is without merit.

The Georgia Mutual policy defined "insured" as: "(a) With respect to the insurance for bodily injury liability and for property damage liability the *unqualified* word 'INSURED' includes the named insured and if the named insured is an individual, his spouse, if a resident of the same household, and also includes any person while using the automobile and *ANY PERSON OR ORGANIZATION LEGALLY RESPONSIBLE FOR THE USE HEREOF, PROVIDED THE ACTUAL USE OF THE AUTOMOBILE IS BY THE NAMED INSURED.*" The policy provided that Georgia Mutual would provide a defense for the insured.

In *Zurich Ins. Co. v. New Amsterdam Cas. Co.*, 117 Ga. App. 426 (2) (160 SE2d 603) (1968), the court evaluated an omnibus clause akin to the one at issue in this case. In *Zurich*, the term "insured" included any person or organization legally responsible for the use of the automobile, provided the actual use of the automobile was with the permission of the named insured. The *Zurich* court concluded that "the definition includes both the person using and the 'person or organization legally responsible for' such use, and the latter phrase is sufficiently broad to include an employer who is responsible for the negligent use by the employee in a *respondeat superior* situation." Id. at 429. Accordingly, a non-owner/employer was deemed an "insured" under the owner of the vehicle's policy.

A similar conclusion was reached in *Barker v. United States*, 233 FSupp. 455 (2) (N. D. Ga. 1964). In that case, the court held that the United States was an "insured" under the governmental employee's

liability policy when he was involved in an accident while in the scope of his employment. See also *Southern Gen. Ins. Co. v. Boerste*, 195 Ga. App. 665, 667 (1) (394 SE2d 566) (1990). Rollins was an insured under the omnibus provision of this policy.[1]

2. In its second enumeration, Georgia Mutual claims that the trial court erred in concluding that it was liable to Rollins since it had the primary responsibility to provide a defense for Rollins in the liability lawsuit. Again, we find no error.

The trial court's conclusion that the Georgia Mutual policy was primary, and that Georgia Mutual thus had the primary duty to defend, was proper. See *Commercial Union Ins. Co. v. Ins. Co. of N. A.*, 155 Ga. App. 786 (273 SE2d 24) (1980). Georgia Mutual's argument that because Rollins was also an insured under the Scottsdale policy, it did not have the primary duty to defend after Rollins' demand is without merit. Although it is true that the excess carrier also has a duty to defend, see generally *State Farm &c. Ins. Co. v. Astro Leasing*, 194 Ga. App. 515 (390 SE2d 885) (1990), Georgia Mutual ignores the concomitant responsibility of the primary carrier and ignores the fact that the Scottsdale policy here did not include a duty to defend.

We conclude that Georgia Mutual was the primary carrier based on the following facts. Rollins' policy with Scottsdale provided coverage for non-owned vehicles while used by employees in the scope of Rollins' business and thus Rollins *was* an "insured" under that policy. Nevertheless, the Scottsdale policy provided for a "self-insured retention" amount of $25,000, which mandated that the first $25,000 would not be paid by Scottsdale, but that the insurer's obligation applied only to the amounts in excess of the self-insured retention. Thus, with regard to the first $25,000 of loss, Rollins was not insured under the Scottsdale policy. With respect to providing a defense, the Scottsdale policy provided that "[t]he *insured* shall have the obligation to provide, at his own expense, adequate defense and investigation of any claim ·. . . ," although Scottsdale retained the right to intercede in the defense if it so desired.

The Georgia Mutual policy provided that "[i]f the insured has other insurance against a loss covered by this policy the company shall not be liable under this policy for a greater proportion of such loss than the applicable limit of liability stated in the declarations bears to the total applicable limit of liability of all valid and collectible insurance against such loss; provided, however, under Coverages A

---

[1] The fact that Rollins contended that McGill was not within the scope of his employment does not alter our conclusion since the complaint alleged that Orkin and Rollins were responsible for McGill's actions while driving the car. See *Loftin v. USF Ins. Co.*, 106 Ga. App. 287 (127 SE2d 53) (1962); see also *Great American Ins. Co. v. McKemie*, 244 Ga. 84 (259 SE2d 39) (1979).

and B the insurance with respect to temporary substitute automobiles under Insuring Agreement IV or other automobiles under Insuring Agreement V shall be excess insurance over any other valid and collectible insurance." As to the first $25,000 of loss, there was no other insurance for Rollins. (Although the parties refer to Rollins as "self-insurer," there is no evidence of this before us. See *Shuman v. Dyess*, 175 Ga. App. 213 (1) (333 SE2d 379) (1985).)

The fact that no "other insurance" existed for the first $25,000, combined with the rule that the primary policy is usually that which is issued to the owner of the vehicle leads us to conclude that the Georgia Mutual policy was primary. "In automobile liability insurance cases, it is usually held that the policy issued to the owner of the vehicle is the primary policy and the insurer issuing it is liable up to the limits of the policy without apportionment. The policy providing that it shall be excess insurance as to non-ownership coverage is not regarded as collectible insurance until the limit of liability of the primary policy is exhausted." (Citations and punctuation omitted.) *Southern Gen.*, supra at 667. Using similar reasoning here, we find that the Georgia Mutual policy was primary and the Scottsdale policy was excess. See generally *Ga. Mut. Ins. Co. v. Southern Gen. Ins. Co.*, 181 Ga. App. 238 (351 SE2d 658) (1986); compare *Holyoke Mut. Ins. Co. v. Cherokee Ins. Co.*, 192 Ga. App. 757 (386 SE2d 524) (1989) (involved construction of two policies with primary liability coverage and identical "other insurance" clauses).

Georgia Mutual's arguments concerning the amount of attorney fees which should be awarded are improper since the trial court's ruling applied to liability only.

3. Finally, Georgia Mutual claims that the trial court erred by finding as a matter of law that Rollins had not waived its right to a defense, even though it failed to properly request a defense as required by the policy and voluntarily undertook its own defense in the lawsuit filed by Benischek. Georgia Mutual argues that Rollins and Scottsdale voluntarily hired counsel, notified Georgia Mutual of that fact and by doing so waived the right to a defense.

Georgia Mutual cites no authority to support this claim and we find it without merit. The record contains the following evidence: The complaint was served on Rollins on April 25, 1986. On May 16, 1986, Rollins demanded that Georgia Mutual provide a defense. On May 22, Georgia Mutual informed Rollins that it would not provide a defense. On May 23, an answer was filed on behalf of Rollins.

Georgia Mutual's argument here rests in large part on its assertion that Rollins sent a letter to it on May 14, 1986 stating that "its own attorneys in conjunction with Scottsdale would file an answer and be in charge of its defense." Apart from this assertion in Georgia Mutual's interrogatory responses, we are unable to locate any evi-

dence of this in the record. Further, the trial court found that "the record clearly shows that Scottsdale voluntarily undertook the defense in the *Benischek* action only after Georgia Mutual refused to provide such defense." Accordingly, we find Georgia Mutual's unsubstantiated assertions in this regard without merit.

Secondly, Georgia Mutual contends that Rollins failed to give timely notice of the lawsuit under the policy. The policy provides that "[i]f a claim is made or suit is brought against the insured, the insured shall immediately forward to the company every demand, notice, summons or other process received by him or his representative. . . ." Georgia Mutual does not claim that any prejudice was caused from the delay and its argument is meritless for a variety of reasons. See generally OCGA §§ 40-9-103; 33-7-15; *Starnes v. Cotton States Mut. Ins. Co.*, 194 Ga. App. 320 (1) (390 SE2d 419) (1990), aff'd 260 Ga. 235 (392 SE2d 3) (1990); *Champion v. Southern Gen. Ins. Co.*, 198 Ga. App. 129 (1) (401 SE2d 36) (1990).

*Judgment affirmed. Pope, C. J., and Birdsong, P. J., concur.*

DECIDED JULY 16, 1993 —
RECONSIDERATION DENIED JULY 29, 1993 —

*Smith, Gilliam & Williams, Steven P. Gilliam, Bradley J. Patten*, for appellant.

*Ogletree, Deakins, Nash, Smoak & Stewart, Jay M. Barber, M. Jefferson Starling III, Decker & Hallman, Richard P. Decker*, for appellee.