A02A0456, A02A0457. JACKSON et al. v. SLUDER; and vice versa.
(569 SE2d 893)

SMITH, Presiding Judge.

We granted interlocutory review to consider whether a liability insurer's motion to transfer on the basis of improper venue and the insurer's supplemental motion for summary judgment on the excess policy were properly denied. The insurer contends that venue must be either in the county where the motor vehicle accident occurred or in the county where the tortfeasor or his employer reside. We find otherwise. But, because the case must be transferred as to two other defendants, we affirm in part and reverse in part.

---

The underlying litigation arose from a vehicular collision that occurred in Gordon County on Georgia Highway 136. As truck driver Charles M. Jackson was making a left turn while driving a fully loaded tractor-trailer, he pulled into the path of Greggory Glen Sluder, who was riding a motorcycle. Sluder sustained serious injuries, which he testified included the permanent loss of the use of his left arm. At the time of the incident, Jackson was an employee of Adams Motor Express, Inc. (AME), the owner of the truck. Liberty Mutual Insurance Company (Liberty Mutual) was AME's liability and excess insurer on the date of the accident. No copy of any policy was on file with the Georgia Public Service Commission (PSC) on the date of the collision.

Sluder sued all three defendants, Jackson, AME, and Liberty Mutual, in the State Court of Fulton County. At the time of both the filing and the accident, Jackson was a resident of Oglethorpe County, and AME was a Georgia corporation with its principal place of business and its registered agent in Franklin County. As to Liberty Mutual, Sluder alleged:

> Defendant insurer is a Massachusetts insurance company conducting business as an insurance company in the State of Georgia and is subject to the jurisdiction of this Court. The insurer has an agent and place of doing business in Fulton County, Georgia and/or had an agent or place of doing business in Fulton County on or about September 4, 1997, or both. Venue is proper as to the insurer, pursuant to OCGA § 33-4-1.

Sluder amended his complaint twice. After ascertaining the existence of an excess policy of insurance, he sought recovery against Liberty Mutual under the direct action statute, OCGA § 46-7-12, and under a third-party beneficiary theory.

Jackson, AME, and Liberty Mutual (the defendants) filed a motion to transfer. Denying residence in Fulton County for purposes of venue, the defendants moved to transfer the case to the State Court of Franklin County. Pointing out that their responsive pleadings had raised the defense of improper venue, their joint brief asserted: "No defendant resides in Fulton County and, thus, venue is . . . improper here." Relying upon *Southern Drayage v. Williams*, 216 Ga. App. 721, 724 (455 SE2d 418) (1995), Liberty Mutual argued that an insurance company sued pursuant to the direct action statute " 'cannot be considered a joint tortfeasor for venue purposes because the cause of action against it arises in contract.' " The defendants also moved to strike all references to the existence of the excess policy from Sluder's amended complaint.

In a single order, the trial court addressed several issues including the ones appealed here. The court denied the defendants' motion to transfer but granted the defendants' motion to strike and directed that "[a]ny reference to the excess insurance policy is hereby stricken from the Plaintiff's amended complaint." The court also denied Liberty Mutual's supplemental motion for summary judgment. This appeal and cross-appeal challenge those three rulings. The entire case remains pending against all three defendants in Fulton County.

*Case No. A02A0456*

1. Jackson, AME, and Liberty Mutual contest the denial of their motion to transfer. They assert that the entire case should be transferred to the State Court of Gordon County.[1] Liberty Mutual, in particular, "vehemently object[s]" to splitting the litigation between Fulton County and Gordon County. They contend that because none of the defendants reside in Fulton County and "because . . . the venue of Liberty Mutual cannot serve as the basis for venue over the remaining defendants, venue is improper in Fulton County."

The direct action statute "establishes an independent cause of action against the carrier's insurer on behalf of a member of the public injured by the carrier's negligence." (Citation and punctuation omitted.) *Glenn McClendon Trucking Co. v. Williams*, 183 Ga. App. 508-509 (1) (359 SE2d 351) (1987) (full concurrence as to Division 1). That statute provides a special remedy for those injured by motor carriers, allowing them to file a direct action against the motor carrier's insurance company. See id. But a motor carrier and its insurer are not considered joint tortfeasors or joint obligors. *Thomas v. Bobby Stevens Hauling Contractors*, 165 Ga. App. 710, 712 (1) (302 SE2d 585) (1983). Proper venue as to one defendant is not necessarily proper venue as to the other. Id. at 714 (2). The joinder provision in the direct action statute permits a plaintiff to join a motor carrier's insurance company in the same action as a motor carrier. OCGA § 46-7-12 (e). Since the direct action statute is in derogation of common law, its terms require strict compliance. *Nat. Indem. Co. v. Tatum*, 193 Ga. App. 698, 700 (388 SE2d 896) (1989).

In strictly construing the statutory terms, this court has held repeatedly that in order to maintain a direct action against the insurer under OCGA § 46-7-12 (e) or former § 46-7-58 (e), a plaintiff must prove that — in lieu of bond — an insurance policy was filed with and approved by the PSC. *Lockhart v. Southern Gen. Ins. Co.*, 231 Ga. App. 311, 312 (498 SE2d 161) (1998); *Canal Ins. Co. v.*

---

[1] Although the defendants initially moved to transfer the case to Franklin County, they now agree that venue is proper in Gordon County.

*Farmer*, 222 Ga. App. 539, 540 (474 SE2d 732) (1996); *Southern Gen. Ins. Co. v. Waymond*, 221 Ga. App. 613, 615 (472 SE2d 325) (1996). Until the direct action statute was amended in 2000, joinder was permitted only when the motor carrier had filed a security bond or an indemnity policy with the PSC.

Two forms used by the PSC are relevant here: Form E, "Uniform Motor Carrier Bodily Injury and Property Damage Liability Certificate of Insurance," and Form F, "Uniform Motor Carrier Bodily Injury and Property Damage Liability Insurance Endorsement." Here, the record shows that only a Form E certificate and not a Form F certificate was on file with the PSC at the time of the motor vehicle accident.[2] See *McAdams v. U. S. Fire Ins. Co.*, 234 Ga. App. 324, 325 (506 SE2d 679) (1998). The PSC's director of certification testified:

> The Commission's practice and procedures has [sic] never required that carriers file with the Commission the actual insurance policies or endorsements. The policy of the Commission for the last several years, including all of 1996, was that only Form E's were required to be filed. In accordance with the above stated policy, the Form E's filed by Liberty Mutual Insurance Company on behalf of Adams Motor Express, Inc. were regarded by the agency's staff as sufficient evidence of compliance with the insurance requirements pursuant to OCGA § 46-7-12.

In 2000, the legislature revised the direct action statute, OCGA § 46-7-12 (e), apparently to change the dubious result by which companies who dutifully filed a Form F certificate or a policy with the PSC were at a disadvantage vis-à-vis those who failed to do so.[3] Ga. L. 2000, p. 1583, § 1. See, e.g., *Caudill v. Strickland*, 230 Ga. App. 644-645 (1) (498 SE2d 81) (1998) (direct action against insurer foreclosed unless permitted by policy terms or by the filing of a bond or policy of indemnity insurance). To remedy the anomalous statutory scheme, the legislature amended the direct action statute to dispense with the mandatory precondition to suit that the carrier's insurance policy or certificate of insurance be on file with the PSC. The 2000 amendment expressly provides: "The failure to file any form required

---

[2] Maria Dorough, Director of Certification and Permitting for the Transportation Division of the PSC, testified that on May 15, 1996, AME had a Form E filed by Liberty Mutual with the PSC.

[3] An eight-judge majority in *Lockhart*, supra, 231 Ga. App. at 313, alluded to the need for statutory revision, noting that "[a]lthough the fact that there is no statutory obligation for the insurer to file proof of the policy may partially subvert the statute's purpose, it is the role of the legislature – not of this Court – to remedy any such loophole." (Citation omitted.) Id.

by the commission shall not diminish the rights of any person to pursue an action directly against a motor carrier's insurer." OCGA § 46-7-12 (c), Ga. L. 2000, p. 1583, § 1. Under the amended statute, the obligation to file the certificate of insurance with the PSC is now imposed upon the insurer instead of the motor carrier. Pursuant to the repealer provision, "[a]ll laws and parts of laws in conflict with this Act are repealed." Id.

Since the collision at issue occurred on September 4, 1997, and the complaint was filed on February 24, 1999, we must determine whether we are constrained to apply the prior law that contains the "loophole" or instead whether we should apply the law as amended which remedied that problem. See *Lockhart*, supra, 231 Ga. App. at 313; *McAdams*, supra, 234 Ga. App. at 326 (direct action precluded by absence of Form F in PSC files). "An amendment may be applied retroactively if the changes do not affect constitutional or substantive rights and if the legislature did not express a contrary intention." (Citations omitted.) *State v. McCabe*, 239 Ga. App. 297, 298 (519 SE2d 760) (1999). "The general rule is that procedural laws should be applied retroactively unless the legislature has expressed a contrary intent." (Footnote omitted.) *Mug A Bug Pest Control v. Vester*, 270 Ga. 407, 408 (1) (509 SE2d 925) (1999). "[L]aws which affect the remedy only are remedial statutes, which are laws curing defects in the remedy, or confirming rights already existing, or adding to the means of securing and enforcing the same." (Citations and punctuation omitted.) *Glover v. Colbert*, 210 Ga. App. 666, 668 (437 SE2d 363) (1993).

Neither a motor carrier nor its insurer has a vested right in a state of the law that leaves an injured party with only a defective remedy. See *Glover*, supra, 210 Ga. App. at 668. The change at issue is procedural, in that it eliminates a procedural bar that would otherwise foreclose a plaintiff from proceeding directly against a liability insurer when a potential defendant fails to file certain paperwork with the PSC. Id. While the amendment removed a technical impediment, it did not create a new cause of action against Liberty Mutual or expand Liberty Mutual's contractual obligations.

Absent an expressed contrary intent, statutes governing procedure are to be given retroactive application. See *Polito v. Holland*, 258 Ga. 54, 55 (2) (365 SE2d 273) (1988). Here, the legislature did not express its intention that the change be given prospective application either by so saying or by plainly stating that the 2000 amendment to OCGA § 46-7-12 applies only to actions filed on or after a certain effective date. See *Harris v. Murray*, 233 Ga. App. 661, 662 (1) (504 SE2d 736) (1998). Therefore, retroactive application of the 2000 amendment is authorized by *Vester*, supra, 270 Ga. at 408 (1).

But this determination does not end the analysis. As Sluder concedes, Gordon County is the appropriate venue for his claims against

Jackson and AME.[4] The remaining question is not whether joinder of Liberty Mutual in Gordon County would be proper, but whether Sluder may continue the direct action against Liberty Mutual alone in Fulton County. Since the direct action against Liberty Mutual is an independent proceeding on the insurance contract, venue is subject to an independent determination. *Thomas*, supra, 165 Ga. App. at 714 (2). Under OCGA § 33-4-1 of the state insurance code, an injured plaintiff may bring a claim or demand against an insurer in several possible venues. These include any county where the company has an agent or place of doing business or any county where such agent or place of doing business was located at the time the cause of action accrued or the contract was made, out of which the cause of action arose. OCGA § 33-4-1; see *Travelers, Inc. v. Patterman*, 272 Ga. 251, 252 (527 SE2d 187) (2000). A proper basis therefore exists for venue in Fulton County as to Liberty Mutual.

Liberty Mutual relies upon the Supreme Court of Georgia's decision in *Andrews v. Yellow Freight System*, 262 Ga. 476 (421 SE2d 712) (1992), to contend that allowing Sluder to maintain separate actions against it and the carrier in different counties is contrary to the purpose and intent of the direct action statute. In *Andrews*, the Supreme Court held that "[t]he plaintiff has no *separate* claim for damages against the motor carrier's insurer." Id. This conclusion is based on the reasoning that "under the Motor Carrier Act, OCGA § 46-7-1 et seq., the insurance carrier is not, in reality, a *separate* party for purposes of liability, but, rather, is equivalent to a provider of a substitute surety bond, creating automatic liability in favor of a third party who may have a claim for damages for the negligence of the motor common carrier. [Cit.]" Id. From this, Liberty Mutual argues that if it is not a separate party in fact, it may not be the subject of a separate action.

This argument has already been rejected by this court. In *Bartja v. Nat. Fire Ins. Co. &c.*, 218 Ga. App. 815, n. 1 (463 SE2d 358) (1995), we applied *Andrews* in the context of a disputed venue issue. First, we noted the well-established rule that "a contract action against an insurer of a motor carrier on the policy itself is cognizable as an independent suit without joinder of the motor carrier." (Citations and punctuation omitted.) *Bartja*, supra, 218 Ga. App. at 815, n. 1. From this we concluded that, despite *Andrews*, "where an actionable injury exists at the time suit is filed, the injured party need not pursue a suit against the motor carrier in order to sue the insurer." *Bartja*, supra, 218 Ga. App. at 815, n. 1. The statute therefore does not forbid

---

[4] Despite this concession, the record does not appear to include a transfer order as to Jackson and AME.

the maintenance of separate actions against the insurer and the carrier. See, e.g., *Southern Drayage*, supra, 216 Ga. App. at 721-722 (parties agreed that jurisdiction and venue as to insurer would remain in Fulton County); *Thomas*, supra, 165 Ga. App. at 714 (2) (dismissal for improper venue affirmed as to carrier and driver but reversed as to insurer). If maintaining separate causes of action against the carrier and the insurer is a misuse of the direct action statute, as Liberty Mutual contends, then the appropriate remedy lies with the General Assembly, not with the courts.

2. Liberty Mutual contends that the trial court erred in denying its supplemental motion for summary judgment on the issue of whether the excess policy is subject to suit under the direct action statute. We agree with Liberty Mutual that it is not. Because the direct action statute is in derogation of the common law, the terms of that statute must be strictly construed. See *Tatum*, supra, 193 Ga. App. at 700. The direct action statute refers only to "a policy of indemnity insurance in some indemnity insurance company authorized to do business in this state, which policy must substantially conform to all the provisions of this article relating to bonds."[5] OCGA § 46-7-12 (c). The joinder provision explicitly mentions "the motor carrier and its surety" or the insurance carrier "[i]f a policy of indemnity insurance is given in lieu of bond." OCGA § 46-7-12 (e). Nothing in the statute mentions any other insurance or provides authorization for suit against the excess insurer. "Under the guise of construing a statute, we are not at liberty to rewrite it." (Citations omitted.) *White Cloud Charter v. DeKalb County Bd. of Tax Assessors*, 238 Ga. App. 805, 806 (1) (520 SE2d 708) (1999). Moreover, excess insurance coverage is not regarded as "collectible insurance until the limit of liability of the primary policy is exhausted." (Citation and punctuation omitted.) *Ga. Mut. Ins. Co. v. Rollins, Inc.*, 209 Ga. App. 744, 747 (2) (434 SE2d 581) (1993). Liberty Mutual therefore was entitled to judgment as a matter of law on this issue.

### Case No. A02A0457

3. This holding also governs our disposition of Sluder's cross-appeal. In the cross-appeal, Sluder contends that the trial court erred in granting the defense motion to strike portions of his amended complaint. Sluder claims that because Liberty Mutual is a proper defendant already before the court, he is entitled under OCGA § 9-11-18 to bring his claim under the excess policy in order to avoid piecemeal litigation. Sluder asserts that the court erred in ordering that any

---

[5] It also refers to self-insurance, "in lieu of a bond or policy of indemnity insurance." OCGA § 46-7-12 (d).

references to the excess policy be stricken from his complaint. We do not agree.

Sluder cites no law and we have found none that allows him to sue Liberty Mutual under the excess policy in a direct action proceeding. Consistent with our holding in the main appeal, we find that the trial court did not err in ordering all references to the excess policy be stricken from the complaint.

*Judgment affirmed in part and reversed in part in Case No. A02A0456. Judgment affirmed in Case No. A02A0457. Eldridge and Ellington, JJ., concur.*

DECIDED JULY 11, 2002 —
RECONSIDERATION DENIED JULY 30, 2002 ▉▉▉▉▉▉▉

▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

*Carter & Ansley, Christopher N. Shuman, John L. McKinley*, for appellants.
*Jeffrey S. Gilbert*, for appellee.