A03A1741. MORGAN DRIVEAWAY, INC. et al. v. CANAL INSURANCE COMPANY.
(598 SE2d 38)

SMITH, Chief Judge.

This case arises out of a motor vehicle collision that occurred May 4, 2001. Earnest McClary, a driver for Morgan Driveaway, Inc., was delivering a Winnebago motor home and struck the rear of a dump truck driven by Terrell Wallace. Wallace brought this action for personal injuries against McClary, Morgan Driveaway, and Liberty Mutual Fire Insurance Company, Morgan Driveaway's insurer.[1] The defendants answered and successfully moved to add Wallace and his

---

[19] *State v. Terry,* 236 Ga. App. 248, 251 (511 SE2d 608) (1999).
[1] Winnebago Industries, Inc. was also named as a defendant but was later dismissed without prejudice.

insurer, Canal Insurance Company, as defendants in counterclaim. The trial court granted summary judgment to Canal on the ground that Canal was exempt from a direct action under former OCGA § 46-1-1 (9) (C) (xiv). McClary and Morgan Driveaway (collectively "Morgan Driveaway") appeal. We agree with the trial court's conclusion that a direct action against Canal was unauthorized, and we affirm.

1. In general, an insurer may be joined directly in a cause of action with a motor common or motor contract carrier. OCGA § 46-7-12 (c). This Code section "is in derogation of the common law and must be strictly construed. [Cit.]" *Nat. Indem. Co. v. Tatum,* 193 Ga. App. 698, 700 (388 SE2d 896) (1989). At the time of the 2001 collision, former OCGA § 46-1-1 (9) (C) (xiv) provided an exemption from the definition of motor contract carrier and motor common carrier if the vehicle was a dump truck used exclusively in the transportation of certain materials. See Ga. L. 1996, p. 950, § 2. It appears to be undisputed that Wallace was hauling material contained within the exemption as it existed at the time. In 2002, a year after the collision, OCGA § 46-1-1 (9) (C) was amended. The exemption for dump trucks was omitted from the revised statute, and subsection (xiv) was reserved. OCGA § 46-1-1 (9) (C) (xiv).

The central issue in this case is whether the exemption was viable at the time of the collision. If it was viable, a direct action against Canal was improper. Conversely, if the exemption was no longer applicable, as Morgan Driveaway contends, a direct action against Canal was proper.

Morgan Driveaway argues that a direct suit was authorized under OCGA § 46-7-34 (b). That Code section provides:

> All certificates of public convenience and necessity authorizing transportation of property and all registration permits for intrastate exempt commodity transportation that were in effect on December 31, 1994, shall be deemed null and void as of midnight December 31, 1994, and revoked by operation of law effective January 1, 1995. All persons holding certificates of public convenience and necessity authorizing transportation of property and all persons holding registration permits for intrastate exempt commodity transportation issued prior to January 1, 1995, who received a motor carrier of property permit from the Public Service Commission pursuant to its emergency rules shall be deemed to hold a motor carrier of property permit issued under Code Section 46-7-15.1.

Id. In large part, this subsection tracks the language of emergency interim rules promulgated by the Georgia Public Service Commission

(PSC) in response to enactment of the Federal Aviation Administration Authorization Act of 1994 (the FAAA). In addition to its reliance on OCGA § 46-7-34 (b), Morgan Driveaway also cites to these rules in support of its appellate arguments. PSC Rule 1-16-1-.04 (a) provides:

> As required by the Federal Aviation Administration Authorization Act of 1994, all certificates of public convenience and necessity authorizing transportation of property and all registration permits for intrastate exempt commodity transportation issued pursuant to OCGA § 46-1-1 that were in effect on December 31, 1994 shall be deemed null and void as of midnight December 31, 1994 and revoked by operation of law effective January 1, 1995. The Commission finds and concludes that persons holding certificates of public convenience and necessity authorizing transportation of property and persons holding registration permits for intrastate commodity transportation that were in good standing and in full compliance with the laws of Georgia and the rules and regulations of the Commission on December 31, 1994 may continue to operate as motor carriers of property pending issuance of a motor carrier of property permit, provided said carriers continue to comply with the laws of Georgia and the rules and regulations of the Commission regarding insurance, registration of vehicles and safety, including the transportation and handling of hazardous materials.

Morgan Driveaway contends that a conflict exists between OCGA § 46-7-34 (b) and the PSC rules, on the one hand, and former OCGA § 46-1-1 (9) (C) (xiv), on the other, and that OCGA § 46-7-34 (b) applies to this case. It argues that OCGA § 46-7-34 (b) revoked the exemption contained in OCGA § 46-1-1 (9) (C) (xiv), that at the time of the collision it "was the most recent expression by the Legislature" and "was controlling law and applicable to Wallace Trucking." It appears that Morgan Driveaway is arguing that OCGA § 46-7-34 (b) repealed former OCGA § 46-1-1 (9) (C) (xiv) by implication. But it is well settled that

> [r]epeals by implication are not favored. An implied repeal never occurs unless the later act clearly contradicts the former act and their differences cannot be reconciled or the most recent enactment appears to cover the whole law on the subject and substitutes for every prior general, local, and special law relating to that subject matter.

(Footnotes omitted.) *Chatham County v. Hussey*, 267 Ga. 895 (485 SE2d 753) (1997).

Former OCGA § 46-1-1 (9) (C) (xiv) is not in conflict with OCGA § 46-7-34 (b) or with the PSC rules referenced by the latter statute. Former OCGA § 46-1-1 (9) (A) and (B) defined the terms "motor contract carrier" and "motor common carrier" and further refined those definitions in subsection (C) by specifically describing certain vehicles exempted from the definition. Former Former OCGA § 46-1-1 (9) (C) (i)-(xiv). The statute was amended numerous times before and after the date of the collision. In 1994, for example, it was amended to redefine exempt vehicles for hire. In 2002, the statute was again amended, as mentioned above, to remove dump trucks as exempt vehicles. OCGA § 46-1-1 (9) (C) (xiv). Notably, however, even after the 2002 amendment, the current statute continues to list a number of vehicles exempt from the definition of motor common or motor contract carrier. OCGA § 46-1-1 (9) (C) (i)-(xv).

OCGA § 46-7-34 (b) provides in part that registration permits for intrastate exempt commodity transportation were revoked and deemed null and void as of a certain specified time. Id. It goes on to state that even though the permits for exempt commodities were revoked, if carriers of those commodities had "received a motor carrier of property permit from the Public Service Commission pursuant to its emergency rules," that carrier was "deemed to hold a motor carrier of property permit issued under Code Section 46-7-15.1." Id. In contrast to subsection (b), subsection (c) provides that if a person holding a registration permit for intrastate exempt commodity transportation did *not* apply for a motor carrier of property permit pursuant to the rules of the PSC, that person was deemed to have surrendered his or her rights to operate as a motor carrier for hire in this State. Although OCGA § 46-7-34 redefines the circumstances under which a carrier of exempt commodities may continue to operate within this State, it does not alter the definition of motor contract or common carrier, as defined by former OCGA § 46-1-1 (9) (A), (B) and (C). The two statutes address related but nevertheless distinct subject matter. They are not irreconcilable, and OCGA § 46-7-34 (b) therefore did not repeal former OCGA § 46-1-1 (9) (C) (xiv) by implication.

2. OCGA § 46-7-12 (c) permits a direct action against a motor common or contract carrier and its insurer. But the dump truck driven by Wallace was not a motor common or motor contract carrier under OCGA § 46-1-1 (9) (C) (xiv), as that statute existed at the time of the collision. As discussed above, after the collision, OCGA § 46-1-1 was amended to remove the dump truck exemption. We must determine whether this amendment operated retroactively to allow a direct action against Canal.

In general, "statutes prescribe for the future and that is the construction to be given unless there is a clear contrary intention shown. On the other hand, where a statute governs only procedure of the courts, including the rules of evidence, it is to be given retroactive effect absent an expressed contrary intention." (Citations omitted.) *Polito v. Holland*, 258 Ga. 54, 55 (2) (365 SE2d 273) (1988). Substantive law "creates rights, duties, and obligations. Procedural law is that law which prescribes the methods of enforcement of rights, duties, and obligations." (Citations omitted.) Id. at 55 (3).

The amendment to OCGA § 46-1-1 removing the dump truck exemption from the definition of motor contract or common carrier created a new right in favor of plaintiffs — the right to join with the tortfeasor in a lawsuit the company that insured the dump truck. It follows that the amendment *took away* the insurer's right to avoid having its insured characterized as a motor contract or common carrier, to avoid being named directly in a lawsuit, and consequently to avoid the prejudicial impact on jury deliberations of the existence of insurance coverage. Because the amendment affected the rights of all parties, whether they be potential plaintiffs who benefitted from the amendment, or potential defendant-insurers, we conclude that the amendment was substantive in nature and could not be retroactively applied to authorize a direct action against Canal.

This case is distinguished from *Devore v. Liberty Mut. Ins. Co.*, 257 Ga. App. 7 (570 SE2d 87) (2002), and *Jackson v. Sluder*, 256 Ga. App. 812 (569 SE2d 893) (2002). In both cases, we addressed the issue of whether the amendment to OCGA § 46-7-12 permitting a direct action against the insurer of a motor common carrier regardless of whether proper forms were on file with the PSC could be retroactively applied. We held in those cases that the amendment applied retroactively because it was technical in nature, *Jackson*, supra at 816, and altered evidentiary rules rather than substantive rights. *Devore*, supra at 9. In contrast, here the amendment to OCGA § 46-1-1 (9) (C) did not merely create a "technical impediment" to recovery by Morgan Driveaway. *Jackson*, supra at 816. Rather, the amendment expanded Canal's obligations and created a right of direct action by Morgan Driveaway against Canal where none existed before. Consequently, as discussed above, the amendment affected substantive rights and could not be applied retroactively. At the time of the collision, the dump truck insured by Canal was exempted from the definition of a motor contract or motor common carrier by former OCGA § 46-1-1 (9) (C) (xiv). A direct action against Canal was unauthorized, and the trial court did not err in granting summary judgment to Canal.

3. Finally, we note Morgan Driveaway's arguments that a "Motor Carrier of Property Permit" was issued to Wallace on August 10, 1995, and that "Wallace Trucking's registration with the Public Service

Commission as of the date of the accident was not as an exempt commodity carrier, but rather as a Motor Carrier of Property, which establishes, by statutory definition, his status as a 'motor common or contract carrier.'" Morgan Driveaway also cites to Canal's admissions that it filed Form E with the PSC, confirming the existence of liability insurance coverage, that the insurance coverage provided by Canal covered "the obligations imposed upon such motor carrier by the provisions of the motor carrier law of the state of Georgia," and that the policy issued to Wallace served in lieu of the bond required by OCGA § 46-7-12. According to Morgan Driveaway, because Canal "posted the proper forms with the Commissioner and admitted that the posting was in compliance with the obligations imposed upon such motor carrier by the provisions of the motor carrier law of the State of Georgia, Canal is estopped from denying that it is subject to a direct action in this case."

We do not agree. In order to continue doing business in this State, Wallace was *required* by the interim PSC rules to obtain a motor carrier permit. Those rules, however, and OCGA § 46-7-34 (b) do not address the entirely different issue of whether an insurer can be sued in a direct action. Furthermore,

> [t]here is a fundamental and decisive distinction between the unequivocal creation of a statutory direct pre-judgment cause of action against the insurer issuing an approved policy of insurance to a "motor common carrier" and a mere statutory directive that one who is not otherwise a "motor common carrier" shall nevertheless be subject to the Commission's administrative rules on liability insurance. . . . OCGA § 46-7-12 contemplates the existence of a cause of action against a "motor common carrier." That [an] otherwise exempt insured was merely made subject to the Commission's rules . . . does not equate to the statutory status of a "motor common carrier."

*Nat. Indem. Co.,* supra at 699. Under former OCGA § 46-1-1 (9) (C) (xiv), Wallace's dump truck was exempt from motor carrier status, for purposes of a direct action against its insurer. Again, Canal was entitled to summary judgment.

*Judgment affirmed. Ruffin, P. J., and Miller, J., concur.*

DECIDED MARCH 24, 2004 —
RECONSIDERATION DENIED APRIL 6, 2004 —

*Anderson, Walker & Reichert, Robert A. Reichert, Jeanna G. Fennell,* for appellants.

*Adams, Jordan & Treadwell, Marc T. Treadwell, Samuel F. Hart, Jr., Katz, Flatau, Popson & Boyer, Barbara S. Boyer,* for appellee.