A06A0532. IN THE INTEREST OF A. H., a child.

(630 SE2d 587)

BERNES, Judge.

The putative father of A. H. appeals from an order entered by the Juvenile Court of DeKalb County terminating his parental rights. In its order, the juvenile court ruled that appellant lacked standing to object to the termination because he had not timely served A. H.'s biological mother with his legitimation petition. For the following reasons, we vacate and remand.

The record reflects that A. H. was born on September 10, 2002. Appellant is listed as the child's father on the birth certificate, but he never married the mother. Appellant, the mother, and A. H. lived together for a short period after the child's birth, but the mother moved away, taking the child with her. On August 5, 2003, A. H. was taken into protective custody by the DeKalb County Department of Family and Children Services ("DFCS") because the child's mother could not be located and the child had been left at a homeless shelter.

DFCS subsequently filed a deprivation petition alleging that A. H. had been abandoned and that the mother and appellant were illegal drug users. The petition listed appellant as A. H.'s putative father but noted that there was a dispute over whether he was in fact the biological father. The juvenile court subsequently adjudicated A. H. deprived and granted temporary legal custody to DFCS. In its deprivation order, the juvenile court noted that while the mother believed someone other than appellant was A. H.'s biological father, that individual had denied paternity.

In August 2004, DFCS filed its petition seeking to terminate the parental rights of A. H.'s legal and biological parents so that he could be adopted by the foster parents with whom he had been placed. A. H.'s mother had recently married, and the termination petition listed both the mother's husband and appellant as putative fathers.

In October 2004, appellant took a paternity test. The test found that there was a 99.99 percent probability that he was the biological father of A. H. In December 2004, the juvenile court conducted a hearing on the termination petition. The juvenile court was informed that the mother had executed a surrender of her full parental rights to DFCS and had agreed to release A. H. for adoption, and that her husband had chosen not to file a petition for legitimation. Appellant and his appointed attorney were at the hearing, but appellant's attorney requested that the hearing be continued because he had not yet had an opportunity to speak with his client. The juvenile court agreed to continue the hearing with respect to appellant, but the court moved forward with an evidentiary hearing on whether to terminate the parental rights of the mother and her husband. At the close of the hearing, the juvenile court stated on the record that the court was

"provisionally" granting DFCS's petition to terminate the parental rights of the mother and her husband.

On January 10, 2005, appellant filed his petition for legitimation pursuant to OCGA § 19-7-22. The next day, the juvenile court commenced its evidentiary hearing on the termination of appellant's parental rights. At the start of the hearing, appellant moved to dismiss the termination petition based on insufficient service of process. After hearing appellant's testimony, the juvenile court granted the motion insofar as it alleged insufficient service, but held that DFCS could cure the service problem by properly serving appellant in the courtroom with the petition and then having the evidentiary hearing continued for at least 30 days. The juvenile court further agreed with appellant that any time deadlines pertaining to his legitimation petition would begin to run from the present hearing date (January 11, 2005), the date of proper service. None of the other parties present at the hearing objected to these rulings. Appellant then was formally served on the record with the termination petition.

During the hearing, appellant also notified the juvenile court that he had filed a petition for legitimation and that it would also need to be addressed at the next evidentiary hearing. The juvenile court agreed and stated: "Since the mother's rights have been terminated, [and her husband's] rights have been terminated, . . . I think the only party that you need to lawfully serve is [DFCS] . . . [a]nd the child advocate." The juvenile court then set a hearing on the legitimation and termination petitions for February 17, 2005.

At the subsequent February 17, 2005 hearing, counsel for A. H.'s mother objected on the ground that her client had not been served with appellant's petition for legitimation pursuant to OCGA § 19-7-22 (b). Counsel for the mother contended that service should have occurred within the 30-day limitation period imposed by OCGA § 15-11-96 (i), which had already expired, and could not occur thereafter. Appellant conceded that he had not served the mother with his petition, but argued that he was not required to do so because the mother's parental rights had been terminated. Alternatively, appellant argued that the juvenile court should grant a continuance so that he could have additional time to perfect service upon the mother. The juvenile court rejected appellant's arguments and held that the evidentiary hearing would not go forward since the mother had not been served.

On March 21, 2005, the juvenile court entered a comprehensive written order addressing the termination of the parental rights of the mother, the mother's husband, and appellant. In its order, the trial court ruled that the parental rights of all three were terminated as a matter of law. With respect to appellant, the trial court found that because appellant had failed to timely serve the mother with his

legitimation petition, the court was unable to hear his petition on the merits. The juvenile court went on to hold that because appellant had not legitimated the relationship between himself and A. H., he lacked standing to object to the termination of his parental rights.

On appeal, appellant argues that the juvenile court's order terminating his parental rights must be reversed for two reasons. First, he contends that the trial court erred in concluding that he had to serve A. H.'s mother with his petition for legitimation. Second, he contends that even if he should have served A. H.'s mother, the juvenile court misinterpreted the relevant statutory framework by failing to recognize that the court had discretion to grant a continuance and allow appellant additional time to perfect service, even though the 30-day limitation period set out in OCGA § 15-11-96 (i) had previously expired. We will address each argument in turn.

1. OCGA § 19-7-22 is the primary statutory provision addressing how a putative biological father can legitimate his child. Among other things, the statute provides that "[i]f the mother is alive, she shall be named as a party and shall be served [with the putative father's legitimation petition] and provided an opportunity to be heard as in other civil actions under Chapter 11 of Title 9, the 'Georgia Civil Practice Act.' " OCGA § 19-7-22 (b) (2005).[1] Appellant claims that he did not have to serve A. H.'s mother with his legitimation petition under OCGA § 19-7-22 (b) because her parental rights had already been terminated at that point. We disagree. At the time that appellant filed his petition for legitimation on January 10, 2005, the juvenile court had made no more than a verbal ruling that the mother's parental rights were "provisionally" terminated. "[W]hat the judge orally declares is no judgment until the same has been

---

[1] At the time the juvenile court entered its order, a prior version of OCGA § 19-7-22 was in effect that stated "[i]f the mother is alive, she shall have notice of the petition for legitimation." OCGA § 19-7-22 (2004), amended effective July 1, 2005 by Ga. L. 2005, p. 1491, § 1. "A reviewing court should apply the law as it exists at the time of *its* judgment rather than the law prevailing at the rendition of the judgment under review," unless the legislature has expressed a contrary intention or doing so would impair a party's vested substantive rights. (Citations and punctuation omitted; emphasis in original.) *In re L. L. B.*, 256 Ga. 768 (353 SE2d 507) (1987). See also *Jackson v. Sluder*, 256 Ga. App. 812, 816 (1) (569 SE2d 893) (2002). So long as an amendment to a statute only affects procedural matters, it may be applied retroactively. Id. There are no vested substantive rights that will be impaired by applying the current version of OCGA § 19-7-22 (b) to this appeal. See *Henderson v. Dept. of Transp.*, 267 Ga. 90, 91 (2) (475 SE2d 614) (1996) (applying new notice and service provisions of the Tort Claims Act retroactively after concluding that such provisions affected only procedural matters); *Glover v. Colbert*, 210 Ga. App. 666, 668 (437 SE2d 363) (1993) (noting that laws relating to service of process are procedural rather than substantive). Indeed, both parties effectively concede that the current version applies: appellee DFCS quotes the current version in its brief, and appellant focuses throughout his initial brief and reply brief on whether he was required to "serve" the mother with his petition. Under these circumstances, we will "apply the law as it exists at the time of our review." (Citation omitted.) *In the Interest of D. L. N.*, 234 Ga. App. 123, 124 (1) (506 SE2d 403) (1998).

reduced to writing and entered as such," and the juvenile court did not reduce its ruling to writing and enter an order terminating the mother's parental rights until March 21, 2005. (Citation and punctuation omitted.) *Brewer v. Schacht*, 235 Ga. App. 313, 319 (5) (509 SE2d 378) (1998). Furthermore, by its own terms, the juvenile court's verbal ruling was "provisional." Therefore, at the time appellant filed his legitimation petition, and at the time of the February 17, 2005 hearing addressing that petition, the mother's parental rights had not yet been terminated, and appellant still was required to serve her under OCGA § 19-7-22 (b).[2]

2. Appellant next claims that the juvenile court misconstrued the relevant statutory framework by failing to recognize that the court had discretion to grant a continuance and allow appellant additional time to perfect service of his legitimation petition on the mother, although the 30-day limitation period imposed by OCGA § 15-11-96 (i) had already expired. The Georgia Code sets out specific rules that must be followed by a putative father petitioning for legitimation of his child within the context of a termination of parental rights proceeding. Under OCGA § 15-11-96 (h), a petition to terminate parental rights must provide notice to a putative biological father that, within 30 days of receipt of the notice, he must file "[a] petition to legitimate the child pursuant to [OCGA §] 19-7-22" and a "[n]otice of the filing of the petition to legitimate with the [juvenile] court" where the termination action is pending. In turn, OCGA § 15-11-96 (i) provides that:

> A biological father who is not the legal father loses all rights to the child and the court shall enter an order terminating all such father's rights to the child and such father may not thereafter object to the termination of his rights to the child if within 30 days from his receipt of the notice [referenced in subsection (h)] he:
>
> (1) Does not file a legitimation petition and give notice as required in subsection (h) of this Code section;
>
> (2) Files a legitimation petition which is subsequently dismissed for failure to prosecute; or

---

[2] We also point out that the mother was entitled to service of the legitimation petition even though she had already executed a surrender of her full parental rights to DFCS and had agreed to release A. H. for adoption. See *Best v. Acker*, 133 Ga. App. 250, 251 (2), (3) (211 SE2d 188) (1974).

(3) Files a legitimation petition and the action is subsequently concluded without a court order declaring a finding that he is the legal father of the child.

We agree with appellant that OCGA § 15-11-96 (i) does not preclude a juvenile court from granting a continuance and allowing a putative father additional time to perfect service of his legitimation petition upon the biological mother. OCGA § 15-11-96 (i) (2) and (3) clearly are silent as to whether service of the legitimation petition must be carried out within the 30-day limitation period. And, OCGA § 15-11-96 (i) (1) — when read in pari materia with OCGA § 15-11-96 (h) — simply provides that the putative father "has 30 days in which to *institute* a proceeding to legitimate his child and to give notice of the legitimation proceeding *to the court*, or he will forfeit his right to object to the termination of his parental rights." (Emphasis supplied.) *In the Interest of E. D. T.*, 233 Ga. App. 774, 775 (505 SE2d 516) (1998). It does not state that *service* of the petition must occur within the 30 days. See *In the Interest of D. W.*, 264 Ga. App. 833, 834 (1) (592 SE2d 679) (2003) ("If the father fails to *file* a legitimation petition within 30 days, he loses all rights to the child and will not be entitled to object to the termination of his parental rights.") (citations and punctuation omitted; emphasis supplied); *In the Interest of S. H.*, 251 Ga. App. 555, 556 (1) (a) (553 SE2d 849) (2001) (same). Consequently, we conclude that OCGA § 15-11-96 (i) does not contain any specific time limits for perfecting service of a legitimation petition upon the biological mother.

In contrast, as previously noted, OCGA § 19-7-22 states that the mother "shall be served . . . as in other civil actions under Chapter 11 of Title 9, the 'Georgia Civil Practice Act.'" OCGA § 19-7-22 (b). We interpret this language to mean that the procedural rules set out in the Civil Practice Act, and our case law interpreting those rules, should apply to the service of a legitimation petition.

Under the Civil Practice Act, a civil action is commenced by filing a complaint with the court, and the defendant must be served with the summons and complaint within five days from the date of filing. OCGA § 9-11-4 (c). Significantly, however, "failure to make service within the five-day period will not invalidate a later service," id., and a trial court has discretion to continue a case in order to allow a party additional time to perfect service. See, e.g., *Stoner v. McDougall*, 235 Ga. 171, 171-172 (219 SE2d 138) (1975); *Webb v. Nobles*, 195 Ga. 287, 288 (1) (24 SE2d 27) (1943); *Oliver v. City of Elberton*, 124 Ga. 64, 66-67 (52 SE 15) (1905); *Atlanta & Charlotte Air-Line R. v. Harrison & Bro.*, 76 Ga. 757, 759 (2) (1886); *State of Ga. v. Richardson*, 276 Ga. App. 784, 788 (1), n. 3 (625 SE2d 52) (2005). In exercising its discretion, the trial court must consider whether the party seeking additional time has acted diligently in attempting to effectuate

service thus far in the litigation. See generally *Wells v. Drain Doctor*, 274 Ga. App. 127, 127-128 (616 SE2d 880) (2005).

In light of this case law, we conclude that a juvenile court has discretion to grant a putative biological father a continuance of a legitimation or termination hearing in order to allow him additional time to perfect service of his legitimation petition upon the biological mother, irrespective of whether the 30-day limitation period set out in OCGA § 15-11-96 (i) has passed. In deciding whether to exercise its discretion and grant additional time, the juvenile court should consider whether the putative biological father has acted diligently in attempting to serve the biological mother thus far in the juvenile court proceedings.

Here, we cannot conclude from our review of the juvenile court's order and the hearing transcript that the juvenile court recognized it had discretion under the statutory framework to grant appellant a continuance in order to have additional time to perfect service on the mother. "[I]f the appellate court is unable to ascertain whether the juvenile court has exercised its discretion, the appropriate course for the appellate court is not to perform a de novo review . . . but instead is to vacate the judgment and remand the case to the juvenile court for further proceedings consistent with its . . . duty" to exercise its discretion. *In re E. W.*, 256 Ga. 681, 683 (2) (353 SE2d 175) (1987); *Padilla v. Melendez*, 228 Ga. App. 460, 463 (2) (491 SE2d 905) (1997). This result is particularly warranted in the present case, given that

> [t]here can scarcely be imagined a more fundamental and fiercely guarded right than the right of a natural parent to its offspring. To terminate that right is to sever that right for the future as effectively in law as if it never had existed. It is a tearing of the flesh and it can be done by the court only under the most carefully controlled and regulated circumstances for the sake of the child.

(Citation and punctuation omitted.) *In the Interest of S. M.*, 169 Ga. App. 364, 367 (2) (312 SE2d 829) (1983).

Accordingly, we vacate the juvenile court's order finding that appellant could not proceed with his legitimation petition and remand for the court to exercise its discretion and decide whether to continue the case to give appellant additional time to serve the mother. In exercising its discretion, the juvenile court should consider and weigh the fact that during the January 11, 2005 hearing when appellant notified the court that he had filed a legitimation petition, the juvenile court indicated to him that service of his legitimation petition upon the mother would not be necessary. Of course, even if appellant is given another opportunity to serve the mother and is

successful, the matter does not end there, for the juvenile court still must decide whether the legitimation petition should be granted on the merits.

Finally, we note that the juvenile court's decision in the same order that appellant's parental rights should be terminated was predicated on its conclusion that appellant could not proceed with his legitimation petition and thus lacked standing to contest the termination. As such, the juvenile court's ruling that appellant's parental rights were terminated likewise must be vacated.[3] Should appellant ultimately succeed on remand in his attempt to legitimate his relationship with A. H., nothing in this opinion precludes the juvenile court from subsequently holding an evidentiary hearing and finding on the merits that appellant's parental rights should be terminated under OCGA § 15-11-94.

*Judgment vacated and case remanded with direction. Andrews, P. J., and Barnes, J., concur.*

DECIDED APRIL 21, 2006.

*Richard O. Kentish Samms*, for appellant.

*Thurbert E. Baker, Attorney General, Shalen S. Nelson, Senior Assistant Attorney General, Charissa A. Ruel, Assistant Attorney General, Cynthia E. Roberts-Emory*, for appellee.

---

[3] DFCS argues that the juvenile court's decision terminating appellant's parental rights should be affirmed based on the evidence of record, irrespective of whether the juvenile court erred on the legitimation issue. DFCS's argument lacks merit. The evidence relied upon by DFCS to support its claim that appellant's parental rights were properly terminated was presented at the evidentiary hearing on the termination of the *mother's* parental rights. In light of the juvenile court's decision that it could not hear appellant's legitimation petition based on his failure to serve the mother, no evidentiary hearing was held on the termination of *appellant's* parental rights. It would be unfair and a violation of due process to terminate appellant's parental rights based on substantive evidence he has never been given a full opportunity to contest.