A06A0726. RLI INSURANCE COMPANY v. HIGHLANDS ON PONCE, LLC.

(635 SE2d 168)

BARNES, Judge.

Highlands on Ponce, LLC ("Highlands") sued its insurer RLI Insurance Company because the insurer would only pay a portion of its claim following a fire. The parties filed cross-motions for summary judgment. The trial court granted Highlands' motion for partial summary judgment on the issue of additional coverage, and denied RLI's corresponding motion seeking a declaratory judgment on the issue of the additional coverage. RLI appeals. Upon our review, we reverse.

Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. In ruling on a motion for summary judgment, the opposing party must be given the benefit of all reasonable doubt, and the court must construe the evidence and all inferences and conclusions arising therefrom most favorably to the party opposing the motion. *Moore v. Goldome Credit Corp.*, 187 Ga. App. 594, 596 (370 SE2d 843) (1988). However, "rules of contract construction and interpretation are separate from those rules allocating burdens of proof at trial and on motion for summary judgment," and thus are to be independently applied. *Thomas v. American Global Ins. Co.*, 229 Ga. App. 107 (1) (493 SE2d 12) (1997).

This dispute arose after an April 30, 2001 fire involving apartments being constructed by Highlands. Highlands had purchased builder's risk insurance coverage through an insurance broker, Mc-Griff, Seibels & Williams ("MSW"). RLI Insurance Company issued a builder's risk insurance policy to Highlands effective August 30, 2000 to June 30, 2002 showing $29,507,000 in blanket policy limits for any one occurrence. In April 2001, the apartments suffered extensive damage as a result of a fire, and RLI reimbursed Highlands $1,244,542

for the losses sustained, including $100,000 in soft costs and $100,000 in lost business income.

Hard costs represent the amount it would take to physically repair or replace those items of constructed property damaged in the event of a loss. Soft costs include additional interest expense, property taxes, and advertising expense. Business income includes losses of rent during the period of reconstruction.

Although Highlands claimed losses in soft costs and business income well in excess of $100,000, RLI refused to pay for any loss above that amount. Highlands, thereafter, filed suit against RLI alleging breach of contract, bad faith, fraud, expenses of litigation and punitive damages. RLI counterclaimed against Highlands seeking a declaratory judgment that it has no liability to Highlands for soft costs or business income in excess of $100,000 each or $200,000 total. Subsequently, Highlands filed a motion for partial summary judgment seeking a ruling from the court that the policy provided the additional coverage. It argued that the policy terms clearly and unambiguously provided for the additional coverage. All other issues were reserved.

Subsequently, RLI also filed a motion for summary judgment, maintaining that it "has no liability to [Highlands] for either soft costs or business income in excess of $100,000 each . . . because the policy unambiguously limits coverage for soft costs and business income to $100,000 each." RLI further argued that even if the policy is ambiguous, certain material facts established that the parties intended that coverage for soft costs and business income be limited to $100,000.

In granting Highlands' motion and denying RLI's, the trial court found that

> RLI's policy is ambiguous in that the policy's sections on blanket limits on liability and its section on additional limits are subject to more than one reasonable interpretation. Under Georgia law, when the language of an insurance contract is ambiguous and subject to more than one reasonable construction, the policy must be construed in the light most favorable to the insured, which provides him coverage.

1. RLI contends that the trial court erred in finding its policy ambiguous with respect to the amount of insurance available for soft costs and business income, and in construing the ambiguity in favor of Highlands. It maintains that the trial court should have found that the policy clearly and unambiguously limited liability for soft costs and business income to $100,000 each on the date of the loss. Both parties vigorously contend that the contract was unambiguous.

The policy set forth several provisions regarding blanket coverage and limits of liability for other coverage. The following provisions are at issue:

> Limits of Liability:
> The Insurer shall not be liable for more than $29,507,000 for any one occurrence, except as hereinafter provided:
> *The Limit of Liability applies blanket.* Sub-limits stated in the sub-limits schedule shall apply as a part of and not in addition to the Limit of Liability.
> *Additional limits of insurance apply in addition to the Limit of Liability.*
> Limit of Liability applies Per Occurrence unless otherwise stated.
> Sub-limit Schedule:
> Earthquake—Liabilities shall not exceed $29,507,000 per policy year
> Flood—Liabilities shall not exceed $29,507,000 per policy year
> *Additional Limits of Insurance*: Some coverages are automatically provided with their own Limit of Insurance. Increased limits may be purchased for an additional premium.
> *Additional Limits of Insurance*:
> *Soft Costs*—Limit of Insurance Automatically Provided — $100,000 per occurrence. . . .
> *In any one occurrence for Business Income and Rental Income at the project site*—Limit of Insurance Automatically Provided — $100,000 per occurrence.

"An insurance policy is simply a contract, the provisions of which should be construed as any other type of contract." *Hunnicutt v. Southern Farm Bureau Life Ins. Co.*, 256 Ga. 611, 612 (4) (351 SE2d 638) (1987). Construction of the contract, at the outset, is a question of law for the court. *Deep Six, Inc. v. Abernathy*, 246 Ga. App. 71, 73 (2) (538 SE2d 886) (2000). The court undertakes a three-step process in the construction of the contract, the first of which is to determine if the instrument's language is clear and unambiguous. *Woody's Steaks v. Pastoria*, 261 Ga. App. 815, 817 (1) (584 SE2d 41) (2003). If the language is unambiguous, the court simply enforces the contract according to the terms, and looks to the contract alone for the meaning. Id.

> [I]f the contract is ambiguous in some respect, the court must apply the rules of contract construction to resolve the ambiguity. Finally, if the ambiguity remains after applying

the rules of construction, the issue of what the ambiguous language means and what the parties intended must be resolved by a jury.

Id. " 'Ambiguity' is defined as duplicity, indistinctness, an uncertainty of meaning or expression used in a written instrument, and [it] also signifies . . . open to various interpretations." (Punctuation omitted.) *Early v. Kent*, 215 Ga. 49, 50 (1) (108 SE2d 708) (1959).

Here, the policy provides that the blanket limit of $29,507,000 applies unless otherwise stated. It further stipulates that "sublimits" shall apply as part of the blanket limit and not in addition to that limit, but that "additional limits" apply *in addition to* the blanket limit of liability. The contract also provides that "some coverages are automatically provided with their own Limit of Insurance," and that increased limits could be purchased for an additional premium. Soft costs and business income were identified as having additional limits of liability, and for both the additional limit of liability was automatically provided for at $100,000 per occurrence. Read as a whole, however, the policy appears to establish broader liability coverage than RLI maintains it does, in particular for soft costs. Section A(3) of the policy details the soft costs covered and there is no mention of a limit of liability. Section A(4) discusses loss of income coverage and includes a provision that "Covered income means the following income for which a *Limit of Insurance* is shown in the Coverage Form Declarations: (1) Net income . . . and (2) Continuing normal operating expenses incurred in your operation." (Emphasis supplied.) There is no comparable proviso in the soft costs section.

Even recognizing that "an insurance policy must be construed as a whole, and all of the provisions should be . . . interpreted so as to harmonize one with the other," (citations and punctuation omitted) *Chanin v. Tharrington*, 222 Ga. App. 890 (476 SE2d 651) (1996), we agree with the trial court that the provisions regarding blanket liability and additional limits of liability were ambiguous such that the language is subject to more than one reasonable construction.

On the one hand, the contract could be interpreted to mean that soft costs and business costs are limited to $100,000 per occurrence, irrespective of the blanket limit of $29,507,000. On the other hand, however, given the clause that "additional limits" apply *in addition to* the blanket limit of liability, and soft costs and business costs were identified as having additional limits of $100,000, the contract could also be interpreted to mean that once the blanket limit has been exhausted, there remained $100,000 for use to pay for liabilities in soft costs and business income over and above the blanket limit.

Moreover, the policy stipulates that "[t]he insurer shall not be liable for more than $29,507,000.00 for any one occurrence, *except as*

*hereinafter provided.*" (Emphasis supplied.) The contract then explains that additional limits apply *in addition to* the $29,507,000, and that there were additional limits of liability of $100,000 for soft costs, covered property while at temporary locations, covered property while in transit, and business income and rental income. RLI appears to propose that the aforementioned language which indicates that the coverage could exceed $29,507,000 is mere surplusage, since, under RLI's interpretation of the policy, in no instance would the coverage exceed the blanket amount.

In applying the rules of construction, OCGA § 13-2-2 (4) directs that we favor that construction which upholds the contract in whole and in every part, and that we look at the whole contract in arriving at the construction of any part. See *Thornton v. Kumar*, 240 Ga. App. 897, 898-899 (525 SE2d 735) (1999). We also avoid any construction that renders portions of the contract language meaningless. *Holloman v. D. R. Horton, Inc.*, 241 Ga. App. 141, 142 (1) (a) (524 SE2d 790) (1999). Finally, when a provision specifically addresses the issue in question, it prevails over any conflicting general language. *Versico, Inc. v. Engineered Fabrics Corp.*, 238 Ga. App. 837, 841 (2) (520 SE2d 505) (1999). While "[e]xclusions to an insurance policy require a narrow construction on the theory that the insurer, having affirmatively expressed coverage through broad promises, assumes a duty to define any limitations on that coverage in clear and explicit terms," *Western Pacific Mut. Ins. Co. v. Davies*, 267 Ga. App. 675, 680 (1) (601 SE2d 363) (2004), the rules further provide that "[a]ll the attendant and surrounding circumstances may be proved." OCGA § 13-2-2 (1). See *Thomas v. American Global Ins. Co.*, supra, 229 Ga. App. at 108-109 (2) (a) (ambiguity in insurance contract explained by extrinsic evidence).

Here, however, application of the rules of construction is not sufficient to eliminate any ambiguity in the meaning of the policy. Compare *Sewell v. Hull/Storey Dev.*, 241 Ga. App. 365, 367 (1) (526 SE2d 878) (1999) (applying OCGA § 13-2-2 to resolve ambiguity in a contract). Moreover, in considering the parol evidence contained in the documents and affidavits presented by the parties, it appears that both RLI and Highlands are correct in asserting that the policy arguably provides the coverage each asserts, but the contract's terms conflict such that it is impossible to ascertain how much coverage is provided for the items at issue, particularly soft costs.

RLI avers that it was informed by MSW that Highlands only wanted insurance for hard costs in the amount of $29,507,000. It maintains that MSW never requested a quote for either soft costs or business income, and that the $61,965 premium was for property loss

only. RLI stated that the $100,000 coverage for soft costs and business income was a "gratuitous extra," for which it did not charge a premium.

Highlands' agent averred that he and MSW met on two occasions to discuss the total cost of the project and the amount of insurance the company needed to cover financial risks in the event of a total loss during construction of the apartments. He stated that the men reviewed the project's capital budget and agreed that the total limit for the policy should be $25,000,000 to cover building hard costs, soft costs, and business income loss. The figure was increased, however, when the bank making the construction loan wanted the policy to encompass the entire amount of the loan — $29,507,000.

Accordingly, even applying the rule that any ambiguity will be construed most strongly against the drafter, *Gram Corp. v. Wilkinson*, 210 Ga. App. 680 (1) (437 SE2d 341) (1993), the agreement between the parties remains ambiguous as to whether the coverage for soft costs and business income exceeded $100,000. Thus, it is for a jury to consider the circumstances surrounding the transaction to determine the scope and effect of the policy between RLI and Highlands, because if there remains a conflict in the evidence as to the intent of the parties after the introduction of parol evidence, "this disagreement is an evidentiary, factual matter for resolution by the jury and not a matter of law for determination by the court." (Citation and punctuation omitted.) *Karlan, Inc. v. King*, 202 Ga. App. 713, 715-716 (1) (415 SE2d 319) (1992).

"The cardinal rule of the summary procedure is that the court can neither resolve facts nor reconcile the issues but only look to ascertain if there is an issue." *Daniel v. Bank South Corp.*, 183 Ga. App. 274, 277 (358 SE2d 664) (1987).

The trial court, therefore, erred in its grant of partial summary judgment to Highlands.

2. RLI's claim that the trial court erred in construing the contract's ambiguity in favor of Highlands is controlled by our decision in Division 1.

3. Although RLI claims that the trial court erred in failing to enter summary judgment in its favor on Highlands' claims for bad faith, fraud, expenses of litigation, and punitive damages, it is clear from the trial court's order that the only issues reached were those related to coverage, and the other issues were specifically reserved. That the trial court did not resolve the issues of bad faith, fraud, expenses of litigation, and punitive damages in RLI's favor does not convert the trial court's ruling to a grant of summary judgment to Highlands as to those issues.

*Judgment reversed. Andrews, P. J., and Bernes, J., concur.*

DECIDED JULY 5, 2006 —
RECONSIDERATIONS DENIED JULY 28, 2006.

*Bovis, Kyle & Burch, Steven J. Kyle, Charles M. Medlin*, for appellant.
*Fellows, Johnson & La Briola, C. Michael Johnson, Flint & Adler, Michael D. Flint, Shira Adler*, for appellee.