[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
APRIL 18, 2008
THOMAS K. KAHN
CLERK

_____

No. 07-15155
Non-Argument Calendar

_____

D. C. Docket No. 07-00118-CV-MHS-1

HATHAWAY DEVELOPMENT COMPANY, INC.,

Plaintiff-Appellant,

versus

ILLINOIS UNION INSURANCE COMPANY,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

**(April 18, 2008)**

Before MARCUS, WILSON and HILL, Circuit Judges.

PER CURIAM:

Plaintiff, general contractor/developer Hathaway Development Company, Inc. (Hathaway), appeals from the district court's order granting summary judgment to the defendant, Illinois Union Insurance Company (IUI). In this diversity action, Hathaway seeks to recover its construction costs of repair under the terms of the general liability insurance policy (the Policy) issued to it by IUI for the period May 30, 2005, to May 30, 2006.

Hathaway alleges that the costs were necessarily incurred in order to correct the faulty workmanship of four subcontractors on three separate apartment complex construction projects. The district court held that Hathaway could not recover under the terms of the Policy. After thorough review of the record and careful consideration of the parties' briefs, we agree and, accordingly, affirm.

**I.**

The relevant facts are straightforward. The three Hathaway apartment complexes and their respective subcontractors are: (1) Walden at Bartram Springs, Jacksonville, Florida (Walden), Whisnant Contracting Company (Whisnant); (2) Village Highlands, East Point, Georgia (Village), Admiral Concrete, Atlanta Modular and Highlands Engineering; and (3) Walden Legacy, Knoxville, Tennessee (Legacy), plumbing subcontractor Whisnant and Admiral Concrete.

A.

On or about August or September 2005, Hathaway claims that Whisnant installed the wrong-sized dishwasher supply line pipe in the underslab plumbing in Walden.[1]  Hathaway demanded that it be replaced.  The delay caused by the demand for pipe replacement allowed the building pad's compacted subgrade to be exposed to the elements.  When a major rainstorm occurred in late September or early October 2005, the supply line pipes floated out of the ground, ruining the building pad.  The building pad had to be redone.  Pursuant to Hathaway's warranty to the owner, it repaired the water-damaged Walden property in November 2005.[2]

B.

In June 2005, due to a poorly designed (too low) foundation wall and the improper installation of a drainage pipe behind the wall, preventing proper drainage, water began leaking into the Village apartments.  During that summer, Hathaway undertook to repair the damage.  In August 2005, it notified Admiral Concrete, Atlanta Modular and Admiral Engineering of their potential liability for

---

[1] Additionally, Whisnant did not have a Florida plumbing permit.  Therefore, it could not obtain an inspection to approve its installation, causing further delays.

[2] Hathaway notified Whisnant's insurer of the damage in late September or early October 2005.

3

shoddy workmanship.[3] Repair and replacement continued through the fall of 2005, with Hathaway paying for demolition, insulation, drywall, cabinets, trim, doors, flooring and paint. Although Hathaway discussed the liability issue during this period of time with the subcontractors, their insurers and their claims investigators, nothing was resolved, and Hathaway finally contacted its insurance agent on January 27, 2006. IUI received actual notice from Hathaway's insurance agent on February 13, 2006.

C.

On August 20, 2005, another dishwasher supply line installed by Whisnant and Admiral Concrete ruptured at Legacy, damaging four units. Hathaway told the subcontractors to contact their liability insurers on August 22, 2005.[4] Hathaway replaced the carpet, vinyl flooring, cabinets, paint and trim caused by the water damage.[5]

II.

We review the district court's grant of summary judgment *de novo*. *See Anderson v. Unum Provident Corp.*, 369 F.3d 1257, 1262 (11th Cir. 2004) (citation

---

[3] Hathaway alleges that Admiral Concrete did not use the waterproofing membrane specified for the retaining walls but, instead, substituted a damp proof spray, causing cracks in the foundation walls.

[4] The damage to one unit alone was $101,288.31.

[5] Hathaway is not seeking the costs of replacing the dishwasher supply lines.

4

omitted). A motion for summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Id.*, citing Fed.R.Civ.P. 56(c). In making this assessment, "we must view all the evidence and all factual inferences reasonably drawn from the evidence in the light most favorable to the nonmoving party." *Id.* (citation omitted).

**III.**

Hathaway raises six issues on appeal. We discuss each in turn.

A.

Hathaway claims that, in its summary judgment order, the district court improperly placed the burden of proof upon Hathaway, the insured, to disprove the application of three certain insurance exclusions in the policy (the recall exclusion, the mold exclusion and the business risk exclusion) barring its claim. Hathaway claims that IUI, the insurer, did not even attempt to meet its burden, but instead tried to shift its burden of proof to Hathaway, the insured. [6]

In its brief, IUI does not dispute that it has the initial burden of proving that the three pertinent policy exclusions apply. It merely claims that the district court

---

[6] Hathaway cites no portion of the record evidence to support this allegation, however.

5

opinion cites undisputed evidence set forth in the record by IUI in support of its judgment that the exclusions apply.

We have studied the record. We agree with IUI that the district court opinion does not determine that Hathaway had the burden of proof as to the policy exclusions, instead of IUI. We also agree with IUI that it presented undisputed evidence in the record to indicate, many times through Hathaway's own admissions, that these three exclusions applied. This issue, therefore, is without merit.

B.

Next, Hathaway claims the district court erred in determining that it did not provide IUI with timely notice of the occurrence that might result in a claim as soon as practicable under Georgia law. Hathaway claims that the notice provision was not a "condition precedent" of recovery under the Policy, and, that it gave notice as soon as was practicable under the circumstances.[7]

The notice condition in the Policy requires that "[the insured] must see to it that [IUI is] notified as soon as practicable of an 'occurrence' or an offense which may result in a claim . . . ." Hathaway admits that it did not notify IUI until eight

---

[7] Hathaway repaired, remedied and/or otherwise covered up the shoddy workmanship of the subcontractors before IUI was aware there were problems. Prompt notice would have given IUI the opportunity to inspect the workmanship, prior to any repairs being made, in order to make an informed decision.

months after the events occurred at Village, more than five months after the events occurred at Legacy, and more than four months after the events occurred at Walden.[8]

The district court held that, whether notice is timely is usually a question of fact; however, "an unexcused significant delay may be unreasonable as a matter of law." *Canadyne-Georgia Corp. v. Continental Ins. Co.*, 999 F.2d 1547, 1555 (11th Cir. 1993) (citation omitted). We agree with the district court that Georgia courts, applying similar notice requirements, have held that delays such as are present here are unreasonable as a matter of law. *See, e.g., Allstate Ins. Co. v. Edwards,* 237 F.Supp. 195, 197-98 (N.D.Ga. 1964)(nine months); *Caldwell v. State Farm Fire & Cas. Ins. Co.*. 385 S.E. 2d 97 (Ga. 1989)(nine to ten months); *Bituminous Cas. Corp. v. J. B. Forrest & Sons, Inc.*, 209 S.E. 2d 6 (Ga. 1974)(four-month delay). This issue is affirmed.[9]

### C.

Hathaway's next issue is that the district court erred in determining that it failed to comply with the condition in the Policy prohibiting the voluntary making

---

[8] The record indicates that Hathaway was aware of the incidents which occurred from May 2005 to October 2005, yet did not send notice to its insurance agent until January 29, 2006. IUI received actual notice on February 13, 2006.

[9] Any further arguments Hathaway makes in regard to this issue, i.e., that the Policy fails to use the exact words "condition precedent," etc., are without merit.

7

of payments or of assuming obligations. The Policy reads: "No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without [IUI's] consent."

The undisputed facts in the record in this case indicate that Hathaway breached the Policy by undertaking to fix defects and make payments to residents, albeit with good intention, yet without IUI's prior consent. *See* note 7 *supra*. The language is clear, and the district court was correct, in determining that Hathaway made such payments at its peril and not at the cost of the insurer. We affirm the judgment of the district court that Hathaway breached the condition of the Policy prohibiting voluntary payments.

## D.

The next issue Hathaway raises on appeal is that the district court erred in determining that there was no "occurrence" as that term is defined in the Policy and under Georgia law. The Policy provides: "This insurance applies to 'bodily injury' and 'property damage' only if . . . [t]he 'bodily injury' or 'property damage' is caused by an 'occurrence' . . . ." The Policy defines an "Occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful condition."

The district court determined, and we agree, that in this case the

subcontractors' work on the projects was "an injury accidentally caused by intentional acts." *See Owners Ins. Co. v. James*, 295 F.Supp. 2d 1354, 1364 (N.D.Ga. 2003). It does not constitute an accident under the Policy, and therefore any damage resulting from that work is not covered. *Id.* at 1363-65.

E.

The fifth issue raised on appeal by Hathaway is that the district court erred in determining that Hathaway was not legally obligated to pay the damages at issue in this appeal. Using the same reasoning and analysis of Part III.C. , *supra*, we affirm the judgment of the district court on this issue.

F.

We combine Hathaway's sixth (recall exclusion), seventh (mold and fungi exclusion) and eight (business risk exclusion) issues into one issue. That is, did the district court err in determining that any one or all of these exclusions barred Hathaway's claim under the Policy?

First, as to the recall exclusion, the Policy excludes coverage of damages incurred for the "repair . . . of . . . 'your work' . . . if such . . . work . . . is withdrawn or recalled . . . from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it." The district court determined, and, after reading the record evidence, we agree, that

9

Hathaway admitted that the damage to work performed at Walden and Village was caused by the faulty workmanship of its subcontractors. It also admits that such damage occurred while Hathaway and/or its subcontractors were performing work at these projects. Therefore, the cost of damage repair is excluded under the business risk exclusion of the Policy.

Secondly, as to the mold and fungi exclusion, the Policy excludes coverage of any property damage "which would not have occurred . . . but for the . . . presence of . . . any 'fungi' or bacteria on or within a building or structure . . ." as well as the costs "arising out of the abating, . . . , cleaning up, removing, . . . remediating or disposing of, or in any way responding to . . . 'fungi' or bacteria . . . ." "Fungi" is defined in the Policy as "any type or form of fungus, including mold or mildew . . . ." The district court determined, and, after our review of the record, we agree, that Hathaway admits that it is seeking the recovery of its expenses incurred to clean up, remove and remediate mold, fungi and bacteria at the Village and Legacy projects. Therefore, the cost of clean up is excluded under the mold exclusion provision of the Policy.

Finally, as to the business risk exclusion, the Policy provides that the insurance does not apply to "'[p]roperty damage' to . . . (5) [t]hat particular part of real property on which you or any contractors or subcontractors working directly

10

or indirectly on your behalf are performing operations, if the 'property damage' arises out of those operations; or . . . (g) [t]hat particular part of any property that must be restored, repaired or replaced because 'your work' was incorrectly performed on it."   The district court determined, and, after our review of the record evidence, we agree that Hathaway is trying to recover its costs associated with repairing and replacing faulty workmanship or work that was "withdrawn from use" at the projects.  Therefore, the costs of repair are excluded under the business risk exclusion provision of the Policy.

## IV.

Accordingly, we affirm the judgment of the district court granting IUI's motion for summary judgment.

**AFFIRMED.**

11