A09A2409. QBE INSURANCE COMPANY v. COUCH PIPELINE & GRADING, INC.

(692 SE2d 795)

BARNES, Judge.

QBE Insurance Company filed a declaratory judgment action, seeking a declaration that certain work performed by its insured, Couch Pipeline & Grading, Inc. ("Couch"), was not covered under a commercial liability insurance policy. The superior court denied QBE's motion for summary judgment, and we granted QBE's application for interlocutory review of the trial court's order. While

the damages arose from an "occurrence," as defined in the contract, they also arose from defective workmanship and thus are excluded from coverage in the policy. Accordingly, we reverse.

> This Court's review of the grant or denial of summary judgment is de novo in order to determine whether any genuine issue of material fact exists for resolution by a jury. To prevail at summary judgment, the moving party must demonstrate that there is no genuine issue of material fact and that the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law pursuant to OCGA § 9-11-56 (c). A defendant may do this by showing the court that the documents, affidavits, depositions and other evidence in the record reveal that there is no evidence sufficient to create a jury issue on at least one essential element of plaintiff's case. The burden on the moving party may be discharged by pointing out by reference to the affidavits, depositions and other documents in the record that there is an absence of evidence to support the nonmoving party's case. If the moving party discharges this burden, the nonmoving party cannot rest on its pleadings, but rather must point to specific evidence giving rise to a triable issue.

(Punctuation and footnotes omitted.) *McCullough v. Reyes*, 287 Ga. App. 483, 484 (651 SE2d 810) (2007).

Viewed in this light, the evidence shows that Couch contracted with Georgia Maintenance and Contracting, Inc., to perform certain grading and pipe work during the construction of an office building. QBE issued a commercial liability insurance policy providing Couch with coverage of $2 million during the contract period. Couch billed Georgia Maintenance $36,756.28 for the work; however Georgia Maintenance refused to pay the full amount because it alleged that some of the grading work was defective. It maintained that instead of removing unsuitable soil, Couch covered the soil with good soil and because of the bad soil, the building pad was unable to be compacted 95 percent, the compaction ratio required by the contract. Couch filed an action for the balance of the money it contended Georgia Maintenance owed under the contract. Georgia Maintenance counterclaimed, alleging that Couch negligently performed grading work in that it failed to remove a strand of unsuitable soil which ultimately prevented the building pad from being compacted to the required compaction ratio. QBE filed the underlying action, seeking a declaration that it has no duty to defend or indemnify Couch in the other action. QBE subsequently filed a motion for summary judg-

ment, which after a hearing, the trial court denied without explanation.

1. QBE contends that Georgia Maintenance's claims do not arise from an "occurrence" as defined in the policy. The insurance contract provided that the insurance applies only if the "'property damage' is caused by an 'occurrence.'" The policy defines "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

> In Georgia, insurance is a matter of contract, and the parties to an insurance policy are bound by its plain and unambiguous terms. Although the provisions of an insurance policy will be construed against the insurer when a part is susceptible of two constructions and a court will adopt that interpretation which is most favorable to the insured, if the language is unambiguous and but one reasonable construction is possible, the court will enforce the contract as written. Interpretation of policy provisions which are plain and definite is a matter of law for the trial court, and a policy provision is not ambiguous even though presenting a question of construction, unless and until an application of the pertinent rules of construction leaves it uncertain as to which of two or more possible meanings represents the true intention of the parties.

(Citations and punctuation omitted.) *Sapp v. State Farm &c. Co.*, 226 Ga. App. 200, 201 (1) (a) (486 SE2d 71) (1997).

QBE contends that Georgia Maintenance's claims against Couch do not constitute an "occurrence" which would trigger coverage under the policy because an "occurrence" is an accident, and as such coverage under the policy only provides for unexpected happenings rather than intentional torts or occurrences that are reasonably expected to happen. It argues that Couch intentionally placed a layer of good soil over the building pad which contained unsuitable soil, and compacted the pad. Thus, there was no "occurrence" under the terms of the policy.

In *SawHorse, Inc. v. Southern Guar. Ins. Co. &c.*, 269 Ga. App. 493 (604 SE2d 541) (2004), we interpreted identical provisions in a case involving alleged faulty workmanship. Like QBE, the insurer, Southern General, contended that faulty workmanship cannot constitute an "occurrence" under a general commercial liability policy. In rejecting the claim, we held:

> Although the policy does not define "accident," under Georgia law, that term means an event which takes place

without one's foresight or expectation or design. Southern Guaranty has cited no Georgia authority supporting its apparent claim that faulty workmanship cannot constitute an "occurrence" under a general commercial liability policy. And this claim runs counter to case law finding that policies with similar "occurrence" language provide coverage for the "risk that . . . defective or faulty workmanship will cause injury to people or damage to other property." Furthermore, Southern Guaranty has pointed to no evidence that SawHorse intended for the faulty workmanship to occur.

(Citations and punctuation omitted.) Id. at 498-499.

Although QBE alleges that Couch performed its grading work in exactly the manner intended and expected, it has pointed to no evidence that Couch intended to prevent the building pad from being suitable for compaction. Georgia Maintenance is alleging defective workmanship. Therefore, under *SawHorse*, QBE is not entitled to summary judgment based on the "occurrence" language in the policy.

2. QBE also asserts that because the damage in this case was limited exclusively to Couch's work and there is no evidence of consequential property damage flowing from that work, the business risk exclusions preclude coverage. We agree.

The contract provided that "property damage to real property" was excluded from coverage. Provision J (5) in the contract excluded coverage for: " '[p]roperty damage' to . . . [t]hat particular part of real property on which [Couch] or any contractors or subcontractors working directly or indirectly on [Couch's] behalf are performing operations, if the 'property damage' arises out of those operations."

Here, Georgia Maintenance counterclaimed for damages in the amount it cost to repair Couch's defective work; it did not claim damages to other property flowing from Couch's work. Rather, it contended that the work itself was defective and had to be redone. Although Couch had asserted that there was damage to other property flowing from its allegedly defective work, namely the soil underneath the pad, which had to be removed, Georgia Maintenance made no allegation of damaged soil. It claimed that Couch performed its work defectively, causing Georgia Maintenance to spend money to repair the defective work.

[B]usiness risk exclusions . . . are designed to exclude coverage for defective workmanship by the insured builder causing damage to the construction project itself. . . . There are two kinds of risks that are incurred by a contractor. The

first is the business risk borne by the contractor to replace or repair defective work to make the building project conform to the agreed contractual requirements. This type of risk is not covered by the [QBE] policy, and the business risk exclusions in the policy make this clear. The second is the risk that the defective or faulty workmanship will cause injury to people or damage to other property. Because of the potentially limitless liability associated with this risk, it is the type for which . . . commercial general liability coverage is contemplated. . . . The risk intended to be insured is the possibility that the . . . work of the insured, once relinquished or completed, will cause bodily injury or damage to property other than to the . . . completed work itself, and for which the insured may be found liable.

*SawHorse*, supra at 495-496.

In *Glens Falls Ins. Co. v. Donmac Golf Shaping Co.*, 203 Ga. App. 508 (417 SE2d 197) (1992), the developer of a golf course alleged that the contractor negligently built part of the project on federally protected wetlands. This Court found that the damages sought by the developer against Donmac were not directly related to the cost of repairing and replacing deficiencies in Donmac's work on the project — which would be excluded from the insurance coverage as business risks — but were claims beyond the scope of the contractual expectations for additional tort damages caused by the alleged deficiencies in Donmac's performance. Id. at 513. We further explained that

[t]he insured, as a source of goods or services, may be liable as a matter of contract law to make good on products or work which is defective or otherwise unsuitable because it is lacking in some capacity. This may even extend to an obligation to completely replace or rebuild the deficient product or work. This liability, however, is not what the coverages in question are designed to protect against.

Id. at 511.

Likewise, here as the business risk exclusion clearly exempted property damage arising from Couch's defective work product, QBE was entitled to summary judgment in its declaratory judgment action, and the trial court erred in denying its motion.

*Judgment reversed. Miller, C. J., and Andrews, P. J., concur.*

DECIDED MARCH 26, 2010.

*Hicks, Casey & Foster, Andrea A. Guariglia*, for appellant.
*Thompson, Slagle & Hannan, Alfred A. Malena, Jr., Donald W. Osborne*, for appellee.