S10G0521. AMERICAN EMPIRE SURPLUS LINES INSURANCE COMPANY v. HATHAWAY DEVELOPMENT COMPANY, INC.

(707 SE2d 369)

THOMPSON, Justice.

We granted a writ of certiorari to the Court of Appeals in *Hathaway Dev. Co. v. American Empire Surplus Lines Ins. Co.*, 301

Ga. App. 65 (686 SE2d 855) (2009) and posed this question: Did the Court of Appeals err in its construction of the term "occurrence" as defined by the insurance policy in question?

Hathaway Development Company, Inc. ("Hathaway"), a general contractor, sued its plumbing subcontractor, Whisnant Contracting Company, Inc. ("Whisnant"), for negligent plumbing work at three job sites. Hathaway sought to recover the cost of repairs caused by Whisnant's faulty workmanship. These costs went beyond those required to fix Whisnant's plumbing mistakes per se; rather they were costs associated with water and weather damage to surrounding properties.

Whisnant failed to answer and, after the entry of a default judgment against Whisnant, Hathaway sought payment from Whisnant's insurer, American Empire Surplus Lines Insurance Company ("AESLIC"). AESLIC denied liability, asserting that Hathaway's claim was not covered under Whisnant's commercial general liability ("CGL") policy because it did not arise out of an "occurrence," defined under the policy as "an accident, including continuous or repeated exposure to substantially the same, general harmful conditions." In this regard, AESLIC argued that Whisnant's negligent workmanship could not be deemed an "accident." The trial court agreed and granted summary judgment to AESLIC. The Court of Appeals reversed, holding that because Whisnant's faulty workmanship caused damage to the surrounding properties, the acts of Whisnant constituted "occurrences" under the CGL policy.

> An insurance policy is simply a contract, the provisions of which should be construed as any other type of contract. *Hunnicutt v. Southern Farm Bureau Life Ins. Co.*, 256 Ga. 611, 612 (4) (351 SE2d 638) (1987). Construction of the contract, at the outset, is a question of law for the court. *Deep Six, Inc. v. Abernathy*, 246 Ga. App. 71, 73 (2) (538 SE2d 886) (2000). The court undertakes a three-step process in the construction of the contract, the first of which is to determine if the instrument's language is clear and unambiguous. *Woody's Steaks v. Pastoria*, 261 Ga. App. 815, 817 (1) (584 SE2d 41) (2003). If the language is unambiguous, the court simply enforces the contract according to the terms, and looks to the contract alone for the meaning. Id.

(Punctuation omitted.) *RLI Ins. Co. v. Highlands on Ponce*, 280 Ga. App. 798, 800, 801 (635 SE2d 168) (2006).

AESLIC's CGL policy provides insurance coverage for damages resulting from an "occurrence." As noted above, the policy defines

an occurrence as an "accident." However, the term "accident" is not defined. Accordingly, we look to the commonly accepted meaning of the term. *Pomerance v. Berkshire Life Ins. Co. of America*, 288 Ga. App. 491, 493 (1) (654 SE2d 638) (2007).

It is commonly accepted that, when used in an insurance policy, an "accident" is deemed to be

> an event happening without any human agency, or, if happening through such agency, an event which, under circumstances, is unusual and not expected by the person to whom it happens. . . . [I]n its common signification the word means an unexpected happening without intention or design.

Black's Law Dictionary, 15 (6th ed. 1990). See also *U. S. Fire Ins. Co. v. J.S.U.B., Inc.*, 979 So2d 871, 883 (Fla. 2007) (CGL policy which provides coverage for "accident" includes " 'injuries or damage neither expected nor intended from the standpoint of the insured' "); *American Family Mut. Ins. Co. v. American Girl, Inc.*, 673 NW2d 65, 76 (Wis. 2004) (circumstances of claim fall within CGL policy definition of "occurrence" where "[n]either the cause nor the harm was intended, anticipated, or expected"). This definition is in accord with our case law which defines the term "accident" in an insurance policy as "an unexpected happening rather than one occurring through intention or design." *City of Atlanta v. St. Paul Fire &c. Ins. Co.*, 231 Ga. App. 206, 208 (498 SE2d 782) (1998). It is also in accord with the trend in a growing number of jurisdictions which have considered construction defect claims under CGL policies and interpreted the word "accident" in this manner. See 2010 Emerging Issues 4860. Compare *Western World Ins. Co. v. Penn-Star Ins. Co.*, 2009 U. S. Dist. Lexis 47921 (S.D. Ill. 2009) with *Century Surety Co. v. Demolition & Dev.*, 2006 U. S. Dist. Lexis 2128 (N.D. Ill. 2006).

Applying this definition in *SawHorse, Inc. v. Southern Guar. Ins. Co. &c.*, 269 Ga. App. 493 (604 SE2d 541) (2004), the Court of Appeals ruled that faulty workmanship can constitute an "occurrence" under a CGL policy:

> Although the policy does not define "accident," under Georgia law, that term means an event which takes place without one's foresight or expectation or design. [The insurer] has cited no Georgia authority supporting its apparent claim that faulty workmanship cannot constitute an "occurrence" under a general commercial liability policy. And this claim runs counter to case law finding that policies with similar "occurrence" language provide coverage for

> "the risk that ... defective or faulty workmanship will cause injury to people or damage to other property." Furthermore, [the insurer] has pointed to no evidence that SawHorse intended for the faulty workmanship to occur.

(Punctuation omitted.) Id. at 498-499. See also *QBE Ins. Co. v. Couch Pipeline & Grading*, 303 Ga. App. 196, 198 (1) (692 SE2d 795) (2010), in which the Court of Appeals held that a subcontractor's failure to perform grading work constituted an "occurrence" under a CGL policy. But see *Owners Ins. Co. v. James*, 295 FSupp.2d 1354 (N.D. Ga. 2003), which was decided before *SawHorse*, supra.

In this case, Whisnant was a subcontractor for Hathaway on three projects. On one project, Whisnant installed four-inch pipe on an underslab, although the contract specified six-inch pipe. On another project, Whisnant improperly installed a dishwasher supply line. On the third project, Whisnant improperly installed a pipe which separated under hydrostatic pressure. Each of these missteps damaged neighboring property being built by Hathaway. The Court of Appeals correctly determined that these acts constituted an "occurrence" under the CGL policy. *SawHorse, Inc. v. Southern Guar. Ins. Co. &c.*, supra. Accordingly, we answer the question posed at the outset of this opinion in the negative and hold that an occurrence can arise where faulty workmanship causes unforeseen or unexpected damage to other property. In reaching this holding, we reject out of hand the assertion that the acts of Whisnant could not be deemed an occurrence or accident under the CGL policy because they were performed intentionally. "[A] deliberate act, performed negligently, is an accident if the effect is not the intended or expected result; that is, the result would have been different had the deliberate act been performed correctly." *Lamar Homes v. Mid-Continent Cas. Co.*, 242 SW3d 1, 16 (Tex. 2007).

*Judgment affirmed. All the Justices concur, except Melton, J., who dissents.*


MELTON, Justice, dissenting.

Because I cannot agree that the negligent acts of a plumber constitute an "accident" under the terms of the insurance policy at issue here, I must respectfully dissent from the majority's erroneous conclusion that American Empire Surplus Lines Insurance Company is responsible for paying for the damages caused by the plumber's defective work in this case.

Under the commercial general liability policy at issue here, claims that do not arise out of an "occurrence" as defined by the policy are not covered under the policy. An "occurrence" under the policy is defined as "an *accident*, including continuous or repeated

exposure to substantially the same general harmful conditions." (Emphasis supplied.) Although the term "accident" is not specifically defined in the policy, it is axiomatic that an "accident" cannot result from "intentional" behavior, as " '[a]ccident' and 'intention' are . . . converse terms[, and] courts have generally held that where an act is intentional, it does not constitute an 'accident' as that term is defined in an insurance policy." (Citations omitted.) *Owners Ins. Co. v. James*, 295 FSupp.2d 1354, 1363 (III) (B) (2) (N.D. Ga. 2003). See also OCGA § 1-3-3 (2) (" 'Accident' means an event which takes place without one's foresight or expectation or design"). Thus, based on the plain language of the insurance contract in this case, coverage would only be provided "for injury *resulting from accidental acts*, but not for an injury *accidentally caused by intentional acts*." (Emphasis in original.) *Owners Ins. Co.*, supra, 295 FSupp.2d at 1364 (III) (B) (2) (analyzing insurance contract language identical to the language at issue in the instant case). See also *Hathaway Dev. Co. v. Ill. Union Ins. Co.*, 274 Fed. Appx. 787, 791 (III) (D) (11th Cir. 2008) (because "subcontractors' *work* on the projects was 'an injury accidentally caused by intentional acts' . . . [i]t d[id] not constitute an accident under the [insurance policy with identical language to the policy at issue in the instant case], and therefore any damage resulting from that work [was] not covered") (citations omitted; emphasis supplied).

Here, the plumber did not conduct his *work* by "accident." His work was done intentionally. As a result, the injuries caused by the plumber's intentional acts would not be covered under the express language of the insurance policy relating to "accidents." *Owners Ins. Co.*, supra; *Hathaway Dev. Co.*, supra. By holding otherwise, both the Court of Appeals and the majority here have improperly stretched the meaning of the insurance policy language beyond the plain terms of the agreement to include insurance against negligent acts as well. *Payne v. Twiggs County School Dist.*, 269 Ga. 361, 363 (2) (496 SE2d 690) (1998) ("[U]nambiguous terms in an insurance policy require no construction, and their plain meaning will be given full effect, regardless of whether they might be of benefit to the insurer, or be of detriment to an insured") (footnote omitted). Because I cannot go along with such an unauthorized departure from the plain terms of the insurance agreement, I must respectfully dissent.

DECIDED MARCH 7, 2011.

*Garrett L. Pendleton, Locke, Lord, Bissell & Liddell, J. David Hopkins III*, for appellant.
*Craig N. Cowart*, for appellee.

*Cokinos, Bosien & Young, Patrick J. Wielinski*, amicus curiae.