[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 19-14539
Non-Argument Calendar
_____

D.C. Docket No. 5:18-cv-00458-TES

KIMBERLY LANDRUM,
f.k.a. Kimberly Shepard,

Plaintiff-Appellant,

versus

ALLSTATE INSURANCE COMPANY,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Georgia
_____

(May 11, 2020)

Before WILLIAM PRYOR, BRANCH and FAY, Circuit Judges.

PER CURIAM:

Kimberly Landrum appeals the summary judgment in favor of her insurer, Allstate Insurance Company, and against her complaint of breach of contract and of bad faith refusal to pay. Allstate issued Landrum a policy that insured her vacation home in Milledgeville, Georgia. After water escaped a water supply line in Landrum's kitchen and spread to several rooms of the house, Allstate denied Landrum's claim for repairs and mold remediation. The district court ruled that Landrum's loss was excluded from coverage. We affirm.

## I. BACKGROUND

Landrum's policy covered "sudden and accidental direct physical loss to property" and provided, "[i]n the event of a covered water loss, up to $10,000 for mold, fungus, wet rot or dry rot remediation." But the policy excluded any "loss to property" caused by seepage "from a plumbing . . . system or from within a domestic appliance; or from, within or around any plumbing fixtures, including but not limited to . . . sinks, or other fixtures designed for the use of water or steam." The policy defined "[s]eepage[ as] meaning continuous or repeated seepage or leakage over a period of weeks, months, or years of water . . . ."

Beginning on March 11, 2018, Landrum's water meter recorded usage of 9 to 10 gallons of water an hour. On April 3, 2018, a billing technician for the City of Milledgeville reported that Landrum had used 5,000 gallons of water. That amount was "not a lot of water" and consistent with a fill flap in a toilet tank

2

failing to close, but because the amount exceeded Landrum's usual water consumption, the City sent a second technician to check the water meter. The second technician reported that Landrum's meter was "creeping slow" and left a placard on her door and dye tablets for her to use to check her toilets for leaks.

On April 4, 2018, Landrum drove to her property after a neighbor called her about the placard. Landrum observed water "spewing out from under the sink in the kitchen" and water "not that deep, but . . . [that] covered" the kitchen floor. She walked outside, turned off the main water valve, and went back inside to inspect the house. Landrum observed that the stairs leading to the basement were wet, that a bathroom and hallway on the main level and part of the basement had water damage, and that drywall had fallen from the ceiling into a downstairs bedroom. The water had not spread to a bedroom or den on the main floor or to Landrum's garage. Landrum "wip[ed] up water out of the kitchen floor with towels" and drove home.

On April 5, 2018, Landrum returned to the property. She discovered that the water supply line from the kitchen sink to the refrigerator was damaged and immediately filed a claim with Allstate. Allstate recorded on its initial contact summary that an "ice maker line leak" was the "cause and origin" of Landrum's loss and that she was "instructed to keep [the] refrigerator ice maker line." The

3

summary also recorded that Landrum's claim was "covered—sudden escape of water from a plumbing source."

On April 16, 2018, Thomas Specht, an adjuster for Allstate, visited Landrum's property. He observed warping on the floor of the cabinet under the kitchen sink, but Landrum's damaged water supply line was unavailable for examination. Specht photographed black mold growing on the walls of the kitchen, hallway, and stairs to the basement and on the walls and ceiling of two bedrooms and a bathroom in the basement. He also photographed water stains on the subfloor of the kitchen and ceiling joists in the basement. When Specht tested the flooring, the moisture meter registered 58.5 percent moisture in the kitchen and 40.7 percent moisture in the hallway, and he determined that a significant amount of water had traveled from the main floor to the basement. Based on the amount of damage to and mold growth in the house, Specht concluded that the water loss "had been going on for a period of a few weeks" and called his supervisor to discuss his findings. Before Specht left the property, he decided that Landrum's loss was excluded from coverage as seepage or leakage.

Landrum obtained quotes to repair her property. MPHI Home Specialists reported that the property required repairs and mold remediation in the kitchen, hallway, and bathroom on the main floor, in the stairway to the basement, and in a den, laundry room, and bedroom in the basement. Paces Contracting Services

estimated that it would cost $12,726.75 to microclean the "heavy" amount of mold inside Landrum's property.

After Landrum filed suit in a Georgia court, Allstate removed the action to federal court and moved for summary judgment. Allstate argued that Landrum's loss was excluded as seepage because her water meter and record of damages established that water had leaked continuously into her kitchen for 25 days, damaged her floors and walls, and grew mold. Landrum responded that the "unexpected and abrupt release of water from the supply line servicing [her] freezer" that resulted in "nine to ten gallons of water usage per hour" was covered as a "sudden" loss rather than excluded as seepage, which was limited to losses involving a "low volume of water" that "mov[ed] slowly." Landrum also argued that the definition for "seepage" was ambiguous. Alternatively, Landrum argued that, even if her loss was seepage, the exclusion for losses "over a period of "weeks" would not apply to losses she incurred between days 1 and 13, and because she had "a covered water loss," she was entitled to reimbursement for mold remediation.

The district court entered summary judgment in favor of Allstate. The district court ruled that Landrum's loss was excluded from coverage as seepage, that its definition was unambiguous as "limited . . . to its plain meaning and to the plain meaning of 'leakage'," and that the exclusion applied to "both seepage,

which in some definitions includes a speed component, and leakage, which does not include a speed component . . . ." The district court refused to bifurcate Landrum's damages absent evidence "that [her] damages were caused by less than 25 days of leakage" or that "such a differentiation has been, or even can be, made." And the district court explained that Landrum did not have "a covered water loss" that would pay for mold remediation.

## II. STANDARD OF REVIEW

We review a summary judgment *de novo*. *Hyman v. Nationwide Mut. Fire Ins. Co.*, 304 F.3d 1179, 1185 (11th Cir. 2002). We also review *de novo* the interpretation of provisions in an insurance contract. *James River Ins. Co. v. Ground Down Eng'g, Inc.*, 540 F.3d 1270, 1274 (11th Cir. 2008). Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

## III. DISCUSSION

Under Georgia law, which the parties agree applies, "[a]n insurance policy is simply a contract, the provisions of which should be construed as any other type of contract." *Am. Empire Surplus Lines Ins. Co. v. Hathaway Dev. Co.*, 707 S.E.2d 369, 371 (Ga. 2011) (quoting *RLI Ins. Co. v. Highlands on Ponce*, 635 S.E.2d 168, 170 (Ga. Ct. App. 2006)). "To determine the insurer's extent of liability under a policy of insurance, a consideration must be made of all those essential provisions

which fix, create, limit, or enlarge liability." *Ga. Farm Bureau Mut. Ins. Co. v. Meyers*, 548 S.E.2d 67, 69 (Ga. Ct. App. 2001). We must "construe the contract as written" and interpret it "according to the entirety of its terms and conditions . . . ." *Cincinnati Ins. Co. v. Gwinnett Furniture Mart, Inc.*, 226 S.E.2d 283, 285 (Ga. Ct. App. 1976). When the "language is unambiguous, the court simply enforces the contract . . . and looks to [it] alone for the meaning" of its terms. *Am. Empire*, 707 S.E.2d at 371 (quoting *RLI Ins.*, 635 S.E.2d at 171).

Landrum's claim to repair, remediate, and replace her property is excluded from coverage. Her insurance policy excludes a loss of property caused by "continuous or repeated seepage or leakage over a period of weeks . . . from a plumbing . . . system . . . or from within or around any plumbing fixtures, including . . . sinks, or other fixtures designed for the use of water . . . ." Allstate submitted the record of water usage on Landrum's property and Specht's testimony to establish that Landrum's loss was caused by water streaming into her house for 25 days. Landrum offered no contrary evidence. She even admitted in the material facts attached to her opposition to summary judgment that her "loss . . . occurred at the Property between March 11, 2018, and April 4, 2018."

Landrum argues that the exclusion for seepage "refer[s] only to slow-moving releases of water," but the policy defines seepage more expansively. Her policy states that "[s]eepage mean[s] . . . seepage or leakage." Use of the

disjunctive "or" in the policy "indicates alternatives and requires that those alternatives be treated separately," *Quindlen v. Prudential Ins. Co. of Am.*, 482 F.2d 876, 878 (5th Cir. 1973), to determine what constitutes seepage. *See also* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts*, 116 (2012) ("Under the conjunctive/disjunctive canon, . . . *or* creates alternatives."). Because seepage and leakage are not defined in the policy, we consider their ordinary meanings. *Am. Empire*, 707 S.E.2d at 371; *see W. Pac. Mut. Ins. Co. v. Davies*, 601 S.E.2d 363, 367 (Ga. Ct. App. 2004) ("[T]erms in an insurance policy are given their ordinary and customary meaning."). *See also* Scalia & Garner, *Reading Law* at 69 ("Words are to be understood in their ordinary, everyday meanings . . . ."). Seepage entails a "[p]ercolation or oozing" or "slow movement of water." Seep, *The Oxford English Dictionary* (online ed.). But leakage has no limitation on the speed of water. Leakage involves a "loss of" and "escape of water or other fluid through a hole," Leakage, *The Oxford English Dictionary* (online ed.), and occurs when an object "let[s] a substance . . . out through an opening." Leak, *The Merriam-Webster Dictionary* (11th ed. 2004). Because Landrum's insurance policy excluded seepage or leakage, the district court did not err by interpreting the exclusion to include "*any* escape of water, including that which is slow-moving and that which is not." And as the district

court concluded, because "the water loss Plaintiff suffered is not covered by the Policy, mold resulting from that loss is also not covered."

## VI. CONCLUSION

We **AFFIRM** the summary judgment in favor of Allstate Insurance Company.