**FIFTH DIVISION**
**MERCIER, C. J.,**
**MCFADDEN, P. J., and RICKMAN, J.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

June 18, 2024

# In the Court of Appeals of Georgia

A24A0477. GENERAL SECURITY INDEMNITY COMPANY OF ARIZONA v. GERALD JONES FORD, LLC.

MERCIER, Chief Judge.

Jerquavius Berry purchased a vehicle from Gerald Jones Ford, LLC, ("the Dealership"), and within a week he got into a collision while fleeing police officers in Virginia and the vehicle sustained a total loss. After Berry failed to pay the remainder of the financed amount for the vehicle and General Security Indemnity Company of Arizona ("General Security") denied the Dealership's insurance claim, the Dealership filed the underlying lawsuit against General Security and Berry, seeking, inter alia, a declaratory judgment regarding General Security's insurance coverage.[1]

---

[1] The Dealership initially filed suit against North American Risk Services, Inc., but later substituted General Security for North American by consent.

The Dealership and General Security filed cross-motions for summary judgment, and the trial court granted the Dealership's motion and denied General Security's motion.[2] General Security filed this appeal, which turns on whether a denied claim renders an insurance policy "invalid." For the following reasons, we find that it does not and reverse the trial court.

"On appeal from the grant of summary judgment this Court conducts a de novo review of the evidence to determine whether there is a genuine issue of material fact and whether the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law." *Auto-Owners Ins. Co. v. Neisler*, 334 Ga. App. 284, 284 n. 1 (779 SE2d 55) (2015) (citation and punctuation omitted); see also OCGA § 9-11-56 (c). That being said, the facts are undisputed. Berry paid a $4,000 down payment and financed the remainder of the price, $23,408.52, in order to purchase the vehicle from the Dealership on January 23, 2020. Exeter Finance LLC ("Exeter") approved the finance terms and purchased the note from the Dealership. In order to purchase the vehicle, Berry presented evidence of an insurance policy with Falls Lake National Insurance Company ("Falls Lake") to the Dealership.

---

[2] Berry is not a party to this appeal.

Three days after he purchased the vehicle, while fleeing police in Virginia, Berry crashed the vehicle, causing a total loss. Berry was later found guilty of violating Virginia Criminal Code § 46.2-817.

Exeter attempted to contact Berry in order to complete the loan validation process, but Berry did not respond, and he failed to make his payments. Thereafter, Exeter rejected the note and returned it to the Dealership.

The Dealership made a claim for the vehicle under Berry's Falls Lake insurance policy. The Falls Lake policy provided that claims for Berry's property damage were excluded from coverage "[w]hile [Berry] or anyone driving with [his] permission is using [his] insured auto in an illegal trade or transportation or fleeing a law enforcement agency." As Berry was fleeing police when the vehicle sustained a total loss, Falls Lake denied the claim.

Prior to selling Berry the automobile, the Dealership obtained an automobile physical damage insurance policy from General Security. The Dealership submitted a claim for Berry's vehicle to General Security, but General Security denied the claim, stating that the loss did not fall within the policy's coverage.

Thereafter, the Dealership filed the underlying declaratory judgment action against General Security. This appeal followed the grant of summary judgment to the Dealership.

The Dealership's insurance policy with General Security provided coverage for insured vehicles until the vehicle was sold or leased by the Dealership. However, the policy also contained a spot delivery extension, which provided

> coverage for [the Dealership's] financial interest in a covered **vehicle** sold by [the Dealership] and delivered to the purchaser, but for which [the Dealership] [has] not been fully paid, and where the purchaser provided [the Dealership] **evidence of insurance** prior to delivery, which proved to be invalid at the time of **loss** to the covered **vehicle**.[3]

(Emphasis in original). Here, there is no dispute that the Dealership sold the vehicle to Berry, and before it provided delivery to Berry, he presented the Dealership with evidence of insurance. Further, there is no dispute that the Dealership was not fully paid. The only dispute at issue is whether Berry's Falls Lake policy was invalid at the time of the loss.

---

[3] "**Evidence of insurance**" is defined in the General Security policy as: "a binder, policy, insurance certificate or other written documentation that has been issued by an authorized agent or representative of the insurance company covering such **vehicle**." (Emphasis in original).

General Security argues that the trial court incorrectly interpreted the term "invalid" in its insurance policy, and that the Falls Lake policy was valid, but merely excluded coverage for the incident as Berry was fleeing police at the time of the crash. In our interpretation of the insurance policy, we are reminded that "[a]n insurance policy is simply a contract, the provisions of which should be construed as any other type of contract." *American Empire Surplus Lines Ins. Co. v. Hathaway Dev. Co.*, 288 Ga. 749, 750 (707 SE2d 369) (2011) (citation and punctuation omitted). Construction of a contract, and thus an insurance policy, is a question of law for the court. See id. In our analysis, we undertake "a three-step process in the construction of the contract, the first of which is to determine if the instrument's language is clear and unambiguous. If the language is unambiguous, the court simply enforces the contract according to the terms, and looks to the contract alone for the meaning." Id. (citation and punctuation omitted). Further,

> [w]ords generally bear their usual and common signification; but technical words, words of art, or words used in a particular trade or business will be construed, generally, to be used in reference to this peculiar meaning. The local usage or understanding of a word may be proved in order to arrive at the meaning intended by the parties[.]

OCGA § 13-2-2 (2).

Here, the General Security policy did not define the term "invalid." When a contract term is not expressly defined, we look to the usual and common meaning of the term. *Taylor Morrison Svcs. v. HDI-Gerling American Ins. Co.*, 293 Ga. 456, 465 (2) (746 SE2d 587) (2013). In *Holmes v. Clear Channel Outdoor*, 298 Ga. App. 178 (679 SE2d 745) (2009), we looked to a dictionary for the meaning of the term "invalidate" and found the definition: "to render of no force or effect." Id. at 181 (1) (citing Webster's New International Dictionary, p. 1305 (2d ed. 1961))[4]. Similarly, Black's Law Dictionary defines "invalid contract" as "[a]n agreement that is either void or voidable." Black's Law Dictionary (11th ed. 2019). While a dictionary is a useful tool for narrowing the range of meanings ordinarily attributed to a term, a dictionary does not always provide a complete answer. *Archer Western Contractors Ltd. v. Estate of Pitts*, 292 Ga. 219, 224 (2) (735 SE2d 772) (2012). In *Holmes*, we also looked at prior decisions in which an insurance policy was rendered invalid, such as if an insured makes misrepresentations in a policy application, or fails to properly notify the

---

[4] Webster's Dictionary defines invalid as "being without formation in fact or truth," "lacking in effectiveness," and "being without legal force or effect." Webster's Third New International Dictionary, p. 1188 (1981).

insurance company of a claim, or fails to cooperate with the insurance company in the investigation of a claim. Id. at 182 (1). We found that a policy is invalid when coverage "applies but becomes invalidated (and thus of no force or effect) through the actions of the insured." Id. at 181 (1).

As discussed by General Security in its appellate brief, the Falls Lake insurance policy does not contain a coverage exclusion for fleeing police for a bodily or property injury to others. Therefore, had Berry caused a bodily or property injury to another while fleeing the police, that third party's claim would not have been excluded and the claim would have been paid. Berry's act of fleeing the police did not invalidate his Falls Lake insurance policy. Rather, the property damage to his own vehicle fell within a policy exclusion, but the Falls Lake policy was of full force and effect at the time of the occurrence. See *Holmes,* 298 Ga. App. at 181 (1) ("[c]overage is not invalidated; it simply does not apply").

"Under Georgia law, insurance companies are generally free to set the terms of their policies as they see fit so long as they do not violate the law or judicially cognizable public policy. Thus, a carrier may agree to insure against certain risks while declining to insure against others." *Reed v. Auto-Owners Ins. Co*, 284 Ga. 286, 287 (2)

(667 SE2d 90) (2008) (citations and punctuation omitted). Here, General Security set the terms of its policy and did not extend coverage for spot delivery unless the purchaser had an invalid insurance policy at the time of the loss. "Where the contractual language unambiguously governs the factual scenario before the court, the court's job is simply to apply the terms of the contract as written, regardless of whether doing so benefits the carrier or the insured." Id. Here, the General Security policy language unambiguously does not cover such claims unless the purchaser's insurance policy was invalid at the time of the loss. Berry's policy with Falls Lake was not invalid at the time of the loss, and therefore, the trial court erred by granting summary judgment to the Dealership and denying summary judgment to General Security. Accordingly, we reverse.

*Judgment reversed. McFadden, P. J., and Rickman, J., concur.*